FREDERIC CUNNINGHAM & others *vs.* BOARD OF RAILROAD COMMISSIONERS.

Suffolk.    November 17, 1892. — January 7, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Certiorari — Board of Railroad Commissioners — Relocation and Union of Railroad Stations — Statute.*

Two railroad stations can be relocated at the same point in one proceeding under the provisions of the Pub. Sts. c. 112, § 157, and the contention that such a change, necessarily lessening the number of stopping places, is an abandonment forbidden by the provisions of the Pub. Sts. c. 112, § 156, is unsound.

A petition was brought by residents of a town, who were legal voters and owners of real estate therein, for a writ of certiorari to quash the proceedings of the Board of Railroad Commissioners approving the proposed relocation of two stations on the line of a railroad and their union in one station. *Held*, that the petition must be dismissed, because none of the petitioners were parties to the original proceedings before the board, and none of them showed such a state of facts as would entitle them to a private remedy if the action of the board was unauthorized or illegal.

PETITION, by Frederic Cunningham and seven other residents of Brookline and legal voters and owners of real estate therein, for a writ of certiorari to quash the proceedings of the Board of Railroad Commissioners in approving the proposed relocation of the Longwood and Chapel stations on the line of the Boston and Albany Railroad Company in Brookline, and their union in one station.

The case, which was heard on petition and demurrer, and reserved for the consideration of the full court, by *Allen*, J., is stated in the opinion.

*S. Hoar*, for the respondents.

*C. P. Greenough*, for the petitioners.

BARKER, J. The contention that two railroad stations cannot be relocated at the same point in one proceeding under the provisions of the Pub. Sts. c. 112, § 157, because such a change, necessarily lessening the number of stopping places, is an abandonment forbidden by the provisions of the Pub. Sts. c. 112, § 156, is unsound. The sections referred to are practically identical with §§ 116 and 117 of the St. of 1874, c. 372, which was a codification, and contained the direction that its provisions, so far as they were the same as those of existing laws, should be construed as a continuation of them, and not as new enactments. St. 1874, c. 372, § 183. The laws regulating the subjects dealt with by the sections mentioned were the St. of 1865, c. 175, and the St. of 1872, c. 162, the first of which provided that no station established for five years should be abandoned without the consent of the Legislature, and the second, that, with certain exceptions, stations might be relocated with the written consent of the Board of Railroad Commissioners and of the local authorities.

Although it was apparent that not only was the public convenience involved in the abandonment of a station, but that the value of neighboring lands might be seriously affected thereby, the subject was first regulated by the St. of 1865, c. 175. Thereafter the Board of Railroad Commissioners was established, and required, whenever in its judgment a change of stations should be reasonable, to so inform the corporation and to report the matter to the Legislature. St. 1869, c. 408, § 3. See also St. 1874, c. 372, § 9 ; Pub. Sts. c. 112, § 16. In the year 1871 a peti-

tion to compel the erection of a union station was referred to the railroad commissioners, whose report called the attention of the Legislature of 1872 to the fact that the petition was one of a numerous class, which should be regulated by a general law authorizing the relocation and discontinuance of railroad stations whenever demanded by a decided preponderance of public convenience and popular desire. Pub. Doc. 1872, No. 29, p. cci. This recommendation seems to have resulted in the passage of the St. of 1872, c. 162, which contained a section omitted from the codification of 1874, to the effect that it should be construed not to affect any legislative act specifically directing the construction or maintenance of any station, and not to apply to any station in regard to the location of which legal proceedings were then pending. St. 1872, c. 162, § 2. Instances of such legislative acts are the Sts. of 1866, c. 126, 1867, c. 112, and 1868, cc. 89, 348, considered by this court in *Commonwealth* v. *Eastern Railroad* and *Keene* v. *Eastern Railroad*, 103 Mass. 254, and the St. of 1871, c. 343, requiring the erection of the Union Station in Worcester. Litigation was then pending in the Supreme Court of the United States with reference to the St. of 1868, c. 348, requiring the erection of a station at a particular point in Lynn. Since the passage of the St. of 1872, c. 162, numerous stations have been relocated, but in no instance save the present has consent been sought to a relocation by which two stations would be consolidated at the same point, except under the provisions of special statutes. Such special acts are found in the Sts. of 1878, c. 118, 1884, c. 47, and 1891, c. 211. A special act authorizing the discontinuance of a station is found in the St. of 1878, c. 117, and one authorizing an abandonment and relocation at a point so remote that the change could not be made under the provisions of the general law, is to be found in the Sts. of 1891, c. 183. The provisions of the Pub. Sts. c. 112, §§ 156, 157, were considered by this court in 1884, in *Attorney General* v. *Eastern Railroad*, 137 Mass. 45.

Recurring to the state of the legislation upon the passage of the St. of 1872, c. 162, it is clear that the operation of the St. of 1865, c. 175, was so far affected by the later statute that an abandonment resulting from a relocation properly made under its provisions is not within the prohibition of the former statute.

This conclusion flows from a consideration of the scope of each statute, the history of the St. of 1872, c. 162, and the fact that every relocation must involve an abandonment of the old stopping place. It is supported by the peculiar wording of the second section, which declares that the statute shall be construed not to affect certain legislative acts, of which the St. of 1865, c. 175, was not one. That such was its contemporary construction is shown by the fact that in the ensuing year several stations were relocated, (Pub. Doc. 1874, No. 29, p. 36,) and no litigation ensued. There is no reason why, in this particular, a different construction should be given to the sections of the codification of 1874, or of the Public Statutes regulating this subject. These re-enactments show that, when properly construed, the provisions relating to abandonment and to relocation are not in conflict. The omission from the codification of 1874 of the second section of the St. of 1872, c. 162, thus placing all stations within the operation of the section authorizing relocation, is significant of the intention of the Legislature to place the regulation of the location of all stations within the operation of general laws. The instances of special acts dealing with particular stations are of but slight significance. The expenditure of money involved in any change is so great that in any instance the special act may have been sought to compel the corporation to make the change, and special acts are too often granted for purposes which might be accomplished under general laws, to justify an inference that they are passed because, in the opinion of the Legislature, a general law does not apply.

Assuming that the statutes, as they now stand, do not forbid any abandonment which results from a relocation properly made, we reach the question whether § 157 of the Pub. Sts. c. 112, authorizes the consolidation of two stopping places into one by their relocation at one point in one proceeding. The words of the statute, "may relocate passenger stations," favor such a view, although, had the singular number been used, that would not have been decisive against it. See Gen. Sts. c. 3, § 7, cl. 2; Pub. Sts. c. 3, § 3, cl. 4. But the controlling consideration is to be found in the purpose of the statute. In *Attorney General* v. *Eastern Railroad, ubi supra,* the test of the power to make a relocation, under the circumstances there disclosed,

was not held to be whether the old stopping place was abandoned; the fact that the community served by the old station would be better accommodated by the new one in the same neighborhood was held sufficient to justify a relocation. Where two existing stations are in the same neighborhood, the test is to be found in the convenience of those served by the old stations. Whether, if the general public convenience would be increased by a relocation which would not unreasonably incommode those specially accommodated by the old stations, such a state of facts would likewise justify a relocation, it is not necessary now to decide. In the case cited, the change held to be authorized by the statute involved the removal of the stopping place a distance of 1,500 feet. Suburban stations are usually half a mile or more apart, while in the present case both stations are not only in the same town and neighborhood, but are less than 1,500 feet apart, and the proposed stopping place is nearly central between them. It is plain that either station might be ·properly relocated at the proposed site, and that the ultimate consolidation of both at that point could be accomplished by consecutive proceedings unless the consolidation of two stations is wholly forbidden. In our opinion, it is not. The intention of the present statutes is to allow such changes of stopping places in any neighborhood as, having special regard to the accommodation of that neighborhood, shall best serve the public convenience; and since the adoption of this policy by the Legislature, as shown by its imposing upon the Board of Railroad Commissioners the duty of recommending all such changes of station as it may deem expedient to secure the safety, convenience, and accommodation of the public, and the passage of the St. of 1872, c. 162, the hard and fast rule prescribed by the St. of 1865, c. 175, that the number of stopping places cannot be lessened, no longer obtains. This being so, there is no reason why two stations which are so situated that each can be properly relocated at the same point may not be so relocated at the same time and in one proceeding. In such a case, the considerations which must govern the action of the public boards whose consent is necessary are the same, whether their consent is asked to the relocations separately or to both at once. In either course, the same principles are to be applied, and the discretion to be

exercised by them is the same. Dealing with both stations at the same time works no additional hardship to any person whose interests are prejudiced by the disuse of either stopping place, while it allows improvements which benefit the neighborhood to be more speedily and economically accomplished. If incidental advantages result to the travelling public or to the railroad corporation, that is no reason against permitting the course.

We regard the decision of this court in *Attorney General* v. *Eastern Railroad*, 137 Mass. 45, as leaving open the question now decided, as well as that whether the relocation of a single station might be so made as not to be justified by the provisions of the Pub. Sts. c. 112, §.157. In that case there remained as many stopping places in the town as before ; but the old stopping place was discontinued, and the change was held to. be not an abandonment prohibited by the statute, because the community accommodated by the old station were properly found by the commissioners to be better accommodated in the same neighborhood by the new. The decision notes the fact that the number of stations was not diminished, but does not state that such a result could not in any case be properly reached, and no such point was involved in the determination of that case.

It is also clear that the petition for certiorari must be dismissed for another reason. None of the petitioners are parties to the proceedings before the respondents, and none of them show such a state of facts as would entitle them to a private remedy if the action of the board was unauthorized or illegal. While, therefore, the law remains as at present, as pointed out by the decision of this court in *Davis* v. *County Commissioners*, 153 Mass. 218, the petitioners, however much their estates may be affected by the proposed changes, have no standing in court. We have stated our views upon the principal question raised by them, because we were informed at the hearing that the petitioners were in fact the persons who would be most affected by the abandonment of the old stations, and that they as well as the railroad corporation and the respondents thought an early indication of the opinion of the court upon the principal question involved of importance, not only in this case, but as affecting the community.

*Petition dismissed.*