## The Chicago and Eastern Illinois Railroad Company

*v.*

## The People *ex rel.* Emil H. Langhans.

*Opinion filed October 23, 1906.*

1. RAILROADS—*right of railroad to determine location of depot.* A railroad company has the right, generally, to determine the location of its freight and passenger depots, subject to the condition that its discretion must be exercised in good faith and with due regard to the necessities and convenience of the public.

2. SAME—*when statute requiring railroad company to stop its trains at county seats does not apply.* Section 25 of the act relating to the operation of railroads and prescribing the duty of railroad companies to stop trains at county seat stations has no application in a *mandamus* proceeding to compel a railroad company to stop its trains at a particular depot in a county seat, where there is another depot within the corporate limits of the county seat at which such trains are stopped.

3. SAME—*right of railroad company to change location of depot.* As against the public, a railroad company acting in good faith has the right, uncontrolled by its previous contracts or acts, to change the location of its depot within the limits of a city, provided it furnishes reasonably safe, accessible and convenient depot accommodations for the public, having regard also for the interests of the stockholders; and it is not essential that the new depot be *equal* in safety, accessibility and convenience with the old one. (*Gray* v. *Chicago, Milwaukee and St. Paul Railway Co.* 189 Ill. 400, and *Lyman* v. *Suburban Railroad Co.* 190 id. 320, distinguished.)

4. SAME—*power of railroad to locate depot is a continuing one.* The power of a railroad company to locate and establish its depots is not exhausted when it has been once exercised, but is a continuing one, which may be exercised in good faith by the company as against the public, provided the new location is reasonably safe, accessible and convenient; and the mere fact that it has located a depot at a certain place and used the same for many years does not estop it from changing such location.

5. MANDAMUS—*writ will not issue in a doubtful case.* The writ of *mandamus* will only be awarded where a clear right to the writ is shown, and not in a case where such right is doubtful or not clearly proven.

APPEAL from the Circuit Court of Vermilion county; the Hon. E. R. E. KIMBROUGH, Judge, presiding.

H. M. Steely, and J. B. Mann, for appellant:

The writ of *mandamus* is of such a nature that courts will grant it only in extraordinary cases, when otherwise there would be a failure of justice. The right must be clear or the writ should not be awarded. *Supervisors* v. *People,* 110 Ill. 557; *Highway Comrs.* v. *People,* 66 id. 339.

A railroad company must be left free to establish and re-establish its depots wherever the public welfare or wants of the company may require. It cannot be compelled to maintain a station at a point when the welfare of the community and of the company requires that it should be changed to some other point. The power of locating stations is, from its nature, a continuing one, and *mandamus* will never be awarded unless the right to the thing sought to be done by it is clearly established. If the right is doubtful the writ will be refused. *Railroad Co.* v. *People,* 132 Ill. 559; *Marsh* v. *Railroad Co.* 64 id. 414; *Waggoner* v. *Railroad Co.* 185 id. 154.

Contracts undertaking to obligate a railroad company to establish its depots exclusively at particular points or to maintain them there forever are void, as against public policy. Such companies should be left free to establish and re-establish their depots wherever the public welfare or the wants of the public and the business of the road require them. *Railroad Co.* v. *State,* 31 Fla. 482; *Railroad Co.* v. *People,* 132 Ill. 559; *People* v. *Railroad Co.* 130 id. 175; *Marsh* v. *Railroad Co.* 64 id. 414; *Holladay* v. *Patterson,* 5 Ore. 177; *Fuller* v. *Dame,* 18 Pick. 472; *Railroad Co.* v. *Ryan,* 11 Kan. 602; *Railroad Co.* v. *Seely,* 45 Mo. 212; *Currie* v. *Railroad Co.* 61 Miss. 725; *Railroad Co.* v. *Marshall,* 136 U. S. 393.

An agreement to erect a depot at a certain place is complied with where such depot is constructed and maintained until the exigencies of the business require its removal. Such a contract is not a contract to maintain a depot there forever, but is subject to the general exigencies of the business, the

public interest, and the change, modification and growth of transportation routes as they may affect the requirements of the railroad company's business. *Railroad Co.* v. *Scott, 77* Fed. Rep. 726; *Railway Co.* v. *Marshall,* 136 U. S. 393.

G. F. Rearick, and William L. Cundiff, for appellee:

The selection of the depot site in question was within the discretion of the company which built the road. This discretion having been exercised, the location cannot be changed. *People* v. *Railroad Co.* 120 Ill. 48.

Where a railroad company has fixed the terminal point of its road in a town or city it cannot afterwards change the location. *Railroad Co.* v. *People,* 143 Ill. 434.

A railroad company cannot abandon part of its line, and where it has wrongfully taken up a part of the same it can be compelled by *mandamus* to restore it. *Railroad Co.* v. *Suffern,* 129 Ill. 274.

A railroad company can be compelled to furnish passenger service by running a separate train for passengers, and the duty can be enforced by *mandamus. People* v. *Railroad Co.* 176 Ill. 512.

The company having exercised its discretion in the location of this depot it cannot be changed without legislative authority. *Railroad Co.* v. *People,* 143 Ill. 434.

The track from the junction to the North street depot was a part of the original line of the Chicago, Danville and Vincennes railway, and the appellant cannot change this to a spur, to be visited with such trains as it sees fit to send there. *Railroad Co.* v. *People,* 143 Ill. 434.

Mr. Justice Wilkin delivered the opinion of the court:

On May 16, 1904, the relator filed an amended petition in the circuit court of Vermilion county, as a resident and tax-payer of the city of Danville, against appellant, praying for a writ of *mandamus* to compel it to stop its trains at the

North street depot, in said city. On the 18th the defendant filed its answer, and on October 10 the petitioner filed his replication. The cause was tried by the court without the intervention of a jury, and a judgment was rendered granting the prayer of the petition as to certain specified trains, and for costs of suit. To reverse that judgment this appeal is prosecuted.

The following facts material to the decision of the case appear from the record: The appellant railroad company is organized under the laws of this State, owning and operating lines of railroad through, to and from the city of Danville. It has a depot or station on North street, in said city, known as the North street depot, established about the year 1877. It also maintains a station about one mile north of said North street depot, known in the record as the Collett street station or depot. Both of these stations are located within the corporate limits of the city of Danville. It owns and operates a line of railroad from the city of Chicago through Danville, in a south-easterly direction, to Terre Haute, Indiana; also another line connecting with said Chicago line at or near the Collett street station and running thence in a south-westerly direction to the village of Sidell, in the same county, where it connects with a line extending to the town of St. Elmo, in Fayette county, this State, and thence by two branches, one to St. Louis, Missouri, and the other to Thebes, on the Mississippi river, connecting with lines south. The city of Danville is the county seat of Vermilion county, the court house being situated about three blocks south-west of the North street depot and about one mile south-west of the Collett street depot. It is alleged in the petition that on January 4, 1904, the company ceased to run any of its regular passenger trains to or stop the same at said North street depot, in said city, but from thence hitherto is now running, threatens to continue to run and has scheduled to run, certain of its passenger trains daily, and certain others daily except Sundays,

into and through the corporate limits of said city of Danville without stopping the same at said North street depot, and that since said date it has scheduled to run through the corporate limits of said city, without stopping at said depot, certain north-bound trains, none of which are through mail passenger trains carrying mail or express matter and passengers from one State to another. The petition further sets out the manner in which the respondent acquired its ownership of said railroad, and that the township of Danville voted and paid certain donations to its predecessors upon condition of the location of the depot substantially at the site of the North street station. The theory of the petition is, that by reason of the location and long maintenance of the said North street depot, its convenience to the public travel, accessibility and surrounding conditions, the respondent company has no right to cease to run its regular trains to that place. It is alleged that said station is conveniently located for the accommodation of the traveling public and the citizens of said city, town and county, in the transaction of their business at the county seat, it being within about eighteen hundred feet of the court house, twenty-five hundred feet of the county jail and two thousand feet of the town and city buildings; also that ninety-eight per cent of all of the business houses and ninety per cent of the residences are located within a radius of one mile of that station; that by reason of the location and maintenance of the depot at said place for twenty-seven years many citizens have erected homes, business houses, manufacturing plants and commercial establishments, and expended large sums of money in taxes and special assessments improving the streets adjacent and approaching said depot, in the belief that it would forever be maintained as a depot and passenger station for all regular and passenger trains. It is further alleged that by reason of the failure of said company to run its regular passenger trains to and stop them at said depot, and the threatened continuance to do so, the citizens of said city, town

and county, and the public at large, have been and will continue to be greatly aggrieved, damaged and inconvenienced, wherefore "it was the duty of the defendant, on January 4, 1904, to run its said passenger trains into and through the corporate limits of the city of Danville, and stop all of said regular trains at said North street depot a sufficient length of time to receive and let off passengers with safety." The prayer is that a writ of *mandamus* be directed to the respondent to so stop its trains, and for such further order in the premises as justice may require.

The answer is, in the main, a general denial of the allegations of the petition, both as to the convenience and the necessity for the continued maintenance of the North street depot and the stopping of its trains there. It sets up the following facts: That within the corporate limits of the city of Danville, one mile north of said North street depot, at Danville Junction, where all of its divisions meet, it has for twenty-five years maintained, and still maintains, a depot at which all its passenger trains, both through and local, pass and stop a sufficient length of time to allow passengers to get on and off; that a large per cent of the passengers to and from Danville, when its trains were run to the North street depot, got on and off at the junction, and still continue to do so; that the company runs through trains from Danville Junction south-easterly into the State of Indiana, and from thence connecting with other railroads to the south; that it runs another train to Shelbyville, and there branches, one branch going to St. Louis and the other to Thebes, on the Mississippi river above Cairo, there connecting by car ferry across the Mississippi river with other lines; that the track extending from the Danville junction to the North street depot is only a spur track about three-quarters of a mile long, and except at the north end it has no connection with any other line; that it is dangerous to run trains to and back them from the North street depot, which is made necessary by the fact that said track between said

222—26

depots is but a spur track; that the growth of the city of Danville since said depot was located has been to the north and east, until the same, with its suburbs, whether within the corporate limits of the original city of Danville or not, now extends two miles to the north and two miles to the east of said North street depot, and the principal business part of the city is to the west and north of said North street depot and upon the street car lines of the city; that the vicinity of said North street depot has ceased to be a desirable residence portion of the city and there are no street car accommodations to and from the same, but that it is surrounded by lumber yards, switch yards, breweries, manufacturing establishments, a few wholesale houses, and saloons. It then describes the location of various street car lines and public buildings, and alleges that the travel to and from the said North street station is not accommodated by street car lines. It denies that the defendant is or can be required to keep and maintain two depots for the accommodation of passengers within the corporate limits of the city of Danville, but that with the exception of three months it has run, and denies that it refuses to run, all of its passenger trains that are not through or inter-State trains, to and from the said North street depot. It denies that none of its trains are through trains, or mail and passenger trains carrying mail or express and passengers from one State to another, and says that certain of its trains (giving their numbers) are through passenger trains running to points outside of the State of Illinois.

The order of the court commands the defendant "to run all its regular passenger trains which are operated into or through the corporate limits of the city of Danville, Illinois, on either of its three divisions or lines of railroad running into said city, viz., first, the Chicago division, extending from Danville to Chicago; second, the Terre Haute division, extending from Danville to Terre Haute, Indiana; and third, the St. Louis division, extending from Danville

to Sidell, Illinois, and there connecting with another line of railroad extending to St. Elmo and Thebes, Illinois,—to the depot station of said railroad located on North street, in said city, and to stop the same at said depot a sufficient length of time to receive and let off with safety all passengers using or desiring to use such trains, but exempting it from running to said depot such of its through trains carrying mail, express or passengers from one State to another, and not engaged in local mail, express or passenger traffic, as shall be necessary to accommodate such inter-State traffic and travel on said railroad," etc.

The controversy between the parties, briefly stated, is this: The relator contends that, inasmuch as the North street depot has been established by the defendant company and maintained for a number of years to accommodate the public travel, it should be compelled to maintain the same and stop its passenger trains at that place. On the other hand, the respondent insists that, having provided within one mile or less of the old station within the corporate limits of the city of Danville, the county seat, another station, reasonable, suitable and sufficient to accommodate the public travel, it cannot be compelled to keep up the old one or stop its trains there, and that to do so would require it to establish, maintain and stop all its trains at both stations.

A good many questions are raised and discussed in the brief and argument of counsel for appellant which in our view of the case need not be decided. That a railroad company has the right, generally, to determine the location of its freight and passenger depots is not and cannot be questioned. Of course, that right is not a mere arbitrary one, but must be exercised with reasonable discretion, taking into account the convenience of the public and the interests of the company.

But two propositions of law were held by the court below on behalf of the relator,—the first, that section 25 of the act entitled "An act in regard to fencing and operating

railroads," as amended on April 11, 1899, is constitutional and valid. That section appears at page 1451 of Hurd's revision of 1903; and prescribes the duty of railroad corporations as to stopping their trains, particularly at county seats. As appears from the foregoing statement of facts above, the North street and Collett street depots of the respondent company are both located within the corporate limits of the city of Danville, the county seat, and therefore the foregoing section has no practical application here. The case of *Illinois Central Railroad Co.* v. *People,* 143 Ill. 434, simply holds that *mandamus* will lie to compel railroad companies to stop all their regular passenger trains at county seat stations long enough to allow passengers to get on and off the same. It does not hold, nor was that question there involved, that trains must be stopped at more than one station at such county seats. If the respondent in this case had simply sought to re-locate its North street depot on another block in the same vicinity, it certainly could not be claimed that it was about to refuse to stop its trains at the county seat. And so here the question is, whether, in view of all the facts and circumstances, the threatened re-location and stopping of trains is reasonable, in view of the public interests and that of the company; and so the case evidently was determined on the second proposition held on behalf of the petitioner, which is as follows:

"The court holds, as a proposition of law, that the defendant has no right, after using and establishing the North street depot, to change its depot to another location in the city and to abandon the said North street depot, in any event unless it furnishes another depot equally as safe and equally as accessible and equally as convenient to the public."

To the holding of this proposition the defendant duly excepted. Several of the propositions submitted to the court by the respondent, holding the law to be otherwise, were refused, so that it is apparent that the decision below was based upon the rule announced in said second proposition.

We assume that it will be conceded that the fact that private citizens may have constructed residences or established business enterprises in view of the expectation that the North street depot would continue to be a regular stopping place for the trains of the respondent could not influence the court, in a *mandamus* proceeding, to compel the continuance of that station and the stoppage of trains there; nor do we think that the question as to whether that place is surrounded by saloons and other places of vice has anything to do with the real question which we are called upon to decide. We held in *People* v. *Chicago and Alton Railroad Co.* 130 Ill. 175, which was a *mandamus* proceeding disposed of in the court below on demurrer to the petition (p. 182) : "Railway companies, in the absence of statutory provisions limiting and restricting their powers, are vested with a very broad discretion in the matter of locating, constructing and operating their railways and of locating and maintaining their freight and passenger stations. This discretion, however, is not absolute, but is subject to the condition that it must be exercised in good faith and with a due regard to the necessities and convenience of the public. Railway companies, though private corporations, are engaged in a business in which the public have an interest and in which such companies are public servants and amenable as such." And on page 184 of the same volume it is further said : "It is in recognition of the paramount duty of railway companies to establish and maintain their depots at such points and in such manner as to subserve the public necessities and convenience, that it has been held by all the courts, with very few exceptions, that contracts materially limiting their power to locate and re-locate their depots are against public policy, and therefore void,"—citing *St. Louis, Jacksonville and Chicago Railroad Co.* v. *Mathers,* 71 Ill. 592; *Same* v. *Same,* 104 id. 257; *Bestor* v. *Wathen,* 60 id. 138; *Linder* v. *Carpenter,* 62 id. 309; *St. J. & D. C. R. R. Co.* v. *Ryan,* 11 Kan. 602; *P. R. R. Co.* v. *Seely,* 45 Mo.

212; *Holladay* v. *Patterson,* 5 Ore. 177; Taylor on Corporations, sec. 162, and authorities cited.

The leading case on this last proposition is *Fuller* v. *Dame,* 18 Pick. 472, which was an action on a note given under an agreement to locate a station on lands of the payee, and, although the station was built according to the agreement, the court held the note void because the agreement was against public policy, and Chief Justice Shaw rendering the opinion of the court said: "The work is a public work and the public accommodation is the ultimate object. In doing this, a confidence was reposed in them, acting as agents for the public,—a confidence which it seems could be safely so reposed when it is considered that the interests of a corporation, as a company of passenger and freight carriers for profit, were identical with the interests of those who were to be carried,—that is, with the public interests. This confidence, however, could only be safely so reposed under the belief that all the directors and members of the company should exercise their best and their unbiased judgment upon the question of such fitness, without being influenced by distinct and extraneous interests having no connection with the accommodation of the public or the interest of the company. Any attempt, therefore, to create and bring into efficient operation such undue influence has all the injurious effects of a fraud upon the public by causing a question which ought to be decided with a sole and single regard to the public interest, to be affected and controlled by considerations having no regard to such interests."

The case of *Mobile and Ohio Railroad Co.* v. *People,* 132 Ill. 559, was also a *mandamus* proceeding to compel the company to stop its trains at a station called Hodges Park. The decision in the circuit court was on the petition and answer and the writ was awarded as prayed. The petition, among other things, alleged that as an inducement to locate and maintain a station and depot at said place, citizens of Hodges Park and persons interested in property there, conveyed to

the railroad company, or its predecessors, without cost to it, certain real estate to be used in the operation of the road, and that in pursuance thereof a station and depot was located at that place and maintained for many years. In our decision reversing the judgment below, we held, as will appear from a quotation from the opinion hereinafter made, that such a contract could not be enforced in a *mandamus* proceeding.

It will readily be seen that what was decided in *Gray v.* *Chicago, Milwaukee and St. Paul Railway Co.* 189 Ill. 400, and *Lyman* v. *Suburban Railroad Co.* 190 id. 320, in no way militates against these decisions. They were both personal actions to enforce individual rights for a breach of a condition subsequent in agreements made by the respective companies and the respective parties bringing the suits.

The record in this case also shows that the learned judge of the trial court held as a proposition of law that no judgment awarding a writ of *mandamus* could be predicated upon the contract set up in the petition, and no cross-errors are here assigned. It must be therefore held as a matter of law, upon the foregoing authorities and upon the record as here presented, that any contract previously entered into, either by the respondent company or its predecessors, to locate and maintain a depot at any particular point, is of no binding force or effect in this action, and the question must be whether the respondent had the discretionary right to change the location of its depot notwithstanding the mere fact that it had previously located the North street depot and maintained it, stopping its trains there for a long period of years. In other words, was it estopped in January, 1904, to abandon that station and establish another? There is no evidence in the record to justify the conclusion that the respondent was actuated by any sinister or fraudulent motive in making the contemplated change, nor do we understand that the relator claims that it was threatening to act arbitrarily for the purpose of oppressing or injuring the public.

Conceding, then, as we understand counsel to admit, that the railroad company has in the first instance the discretionary power, fairly and honestly exercised, to locate all its passenger and freight depots, does the second proposition above lay down the proper limitation upon that power when an attempt is made to re-locate its stations? It will be observed that that proposition limits the right to re-locate unless another location is established of equal safety, equal accessibility and equal convenience to the public as the one abandoned. In other words, it holds, as a matter of law, that the respondent had no right, in any event, to change its passenger station for regular local trains to Collett street unless the latter station was *equal* as to safety, accessibility and convenience with North street. As a statement of a rule of law applicable to the case the announcement is clearly erroneous. If it had been in the form of an instruction to a jury it would have been misleading, and reversible error. As we understand the law announced by this and many other courts, if, in the contemplated change of depots, the respondent was acting in good faith, it had the right, as against the public, uncontrolled by contracts or previous acts on its part, to change the location, provided it furnished *reasonably* safe, accessible and convenient depot accommodations for the public, having also regard for the interests of its stockholders.

In *Mobile and Ohio Railroad Co.* v. *People, supra,* it was said (p. 570): "Railway stations for the receipt and discharge of passengers and freight are for the profit and convenience of both the company and the public. Their location at points most desirable for the convenience of travel and business is alike indispensable to the efficient operation of the road and the enjoyment of it as a highway by the public. Necessarily, therefore, the company cannot be compelled, on the one hand, to locate stations at points where the cost of maintaining them will exceed the profits resulting therefrom to the company, nor allowed, on the other hand, to locate them so far apart as to practically deny to

communities on the line of the road reasonable access to its use. The duty to maintain or continue stations must, manifestly, rest upon the same principle, and a company cannot therefore be compelled to maintain or continue a station at a point when the welfare of the company and the community in general requires that it should be changed to some other point; and so we have held that a railway company cannot bind itself, by contract with individuals, to locate and maintain stations at particular points or to not locate and maintain them at other points,"—citing authorities. After quoting at some length from *Marsh* v. *Fairbury, Pontiac and Northwestern Railway Co.* 64 Ill. 414, *St. Louis, Jacksonville and Chicago Railroad Co.* v. *Mathers,* 71 id. 592, and *People* v. *Chicago and Alton Railroad Co. supra,* the opinion concludes: "In *People ex rel.* v. *Louisville and Nashville Railroad Co.* and *People* v. *Chicago and Alton Railroad Co. supra,* the facts were settled by the pleadings and left no question but that the public welfare required stations to be maintained at the points where we held they should be maintained, and there is therefore nothing in either of those cases that militates against our conclusion here." The conclusion reached was, that no sufficient grounds were shown in that case for the granting of the writ of *mandamus.*

Reliance seems to be placed by counsel for the relator upon the case of *People* v. *Louisville and Nashville Railroad Co.* 120 Ill. 48. But that case was distinguished from the case then before the court and the one at bar in *Mobile and Ohio Railroad Co.* v. *People, supra,* as follows: "The power of election in the location of the line of the railway referred to in *People* v. *Louisville and Nashville Railroad Co.* 120 Ill. 48, results from the franchise granted by the charter to exercise the right of eminent domain, and is therefore totally different from the power of locating stations, which from its very nature is a continuing one." In fact, the real point in controversy here seems to be whether the power of a

railroad company to locate and establish its passenger and freight stations is exhausted when it has once been exercised, or whether the power is, as here said, a continuing one. That the latter proposition must be true seems too clear to require either argument or the citation of authorities. The case of *Chicago and Alton Railroad Co.* v. *Suffern,* 129 Ill. 274, cited by counsel for appellee as authority for the proposition that when a depot has once been established it cannot be changed, will, on examination, be found to have no points of similarity with the case under consideration. The *mandamus* in that case was allowed to compel the company to perform a duty imposed upon it by the constitution, and prevent it from changing the location of its switch track leading to the relators' coal mine, opened in reliance upon the maintenance of said switch and operated for a considerable length of time.

The change in situation, circumstances and surroundings of innumerable kinds will readily suggest that there must be power somewhere to change the location of such stations, and, as has been said by the courts, the common interests of the railroad company and of the community at large properly place that power in the railroad company, to be exercised reasonably and from proper motives. The facts of this case will furnish an apt illustration of the reasonableness of the continuing power to change the location of railroad stations. Twenty-seven years ago, if that was the time the North street depot was located, the evidence all shows that the city of Danville had a population of perhaps five thousand inhabitants. It had no street car accommodations and no interurban lines. Passengers could only reach the railroad stations by walking, or by bus line travel. In 1904 the population had increased to perhaps thirty thousand inhabitants and was still a growing city, having a system of electric street car lines connecting the business part of the city with the public parks and railroad stations. One line extended from the public square to the Collett street station,

upon which cars were run daily at intervals of not more than twelve or fifteen minutes, the fare being five cents each way. It had also several interurban lines, the number of which, perhaps, have been since increased, connecting Danville with other towns and cities in the county and adjoining counties. The "Junction," as it is called in the record, at which the Collett street depot is located, is the center of railroad communications to and from the city of Danville, —that is to say, the Wabash, and two divisions of the Big Four, together with those of the respondent company, all center at that point, and, as we understand the evidence, in 1904, when the change was made by respondent, trains of all these companies stopped at the Junction. There would seem, therefore, to be many reasons for changing the location of the North street depot unless the company can be compelled to maintain two passenger depots within the corporate limits of the city of Danville within less than one mile of each other. Certainly these changed conditions would tend to justify the re-location of the respondent's depots,— at least it cannot be said that reasonable minds might not differ as to the propriety of the contemplated change. Nor do we think it can be seriously contended that the evidence in this record fails to show that the establishment of a regular stopping place for the passenger trains of the respondent at Collett street will not afford *reasonably* safe, accessible and convenient conditions for the public. There might be a wide difference of opinion as to the equality of the stations and their safety, accessibility and convenience, and we think the trial court was in error in holding that the change could only be made, "in any event," unless the conditions were *equal*. Reasonableness, and not equality, is the proper test. Of course, if it could be seen that the conclusion reached by the court was the only one properly deducible from the evidence, or that the decision, under all the facts and circumstances of the case, was correct, then the mere fact that an erroneous proposition was held would

not reverse the judgment below; but, as we have already indicated, we think the decision below must have been influenced by considerations embodied in the erroneous proposition.

Aside from this question of law, we are constrained to hold that the evidence, taken as a whole, is insufficient to authorize the granting of a writ of *mandamus* as prayed in the petition of the relator. One of the first rules applicable to the granting of the extraordinary writ of *mandamus* is that it will issue only in a clear case, and that if the right sought to be enforced is doubtful or not clearly proved it will not be granted. It was said in *Mobile and Ohio Railroad Co.* v. *People, supra:* "The rule has been so often announced by this court that it is unnecessary to cite the cases, that a *mandamus* will never be awarded unless the right to have the thing done which is sought is clearly established. If the right is doubtful the writ will be refused. The burden was on the relator to prove a case authorizing the issuing of the writ, and in our opinion that proof has not been made." And so in this case, we think, upon a careful consideration of all the facts and circumstances proved upon a trial, the right to have the respondent stop all or any of its trains at the North street depot has not been proved. If the railroad company is willing to furnish a substitute for that depot within the limits of the city of Danville and stop its trains there, which, in view of street car service and other facilities for reaching it, will reasonably furnish the public with safe and convenient accommodations, it will have the lawful right to do so, and in the absence of legislative control that right cannot be interfered with by the courts. Whether or not it would be wise for the legislature to vest the power in the Railroad and Warehouse Commissioners, or other suitable public body, to decide whether or not a railroad station once established might be changed, as seems to be provided in some of the States, need not now be considered for the purpose of this decision. It is sufficient that no

such legislation is to be found in our statute. Subject to the limitation that all railroad corporations shall cause their passenger trains to stop at all stations advertised by them as places for receiving and discharging passengers, and that "all regular passenger trains shall stop a sufficient length of time at the railroad station of county seats to receive and let off passengers with safety," the management of such matters is left with the railroad companies themselves, together with discretion to locate and re-locate their stations.

Our conclusion is, that the judgment of the circuit court must be reversed. The cause will be remanded to that court with directions to dismiss the petition at the costs of the relator.

*Reversed and remanded.*