# Louisville & Interurban R. R. Co. v. Callahan, et al.

(Decided May 9, 1911.)

## Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Railroads—Moving Station—Consent of Railroad Commission—A railroad company may move a station for the better convenience of the local public a reasonable distance without the consent of the railroad commission.

2. Effect of Removal—Jurisdiction of Commission—Such a removal of the stopping point 376 feet from the old stopping point is not an abandonment of the station and the railroad commission is without jurisdiction to determine whether it should be done or not.

CLARENCE DALLMAN for appellant.

CHATTERSON & BLISS for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

About thirty-five or forty years ago a steam railroad was built running from the city of Louisville to Prospect about twelve miles. James Callahan, through whose land the road ran for some distance donated the right of way, and a station was established on his land, which was maintained there as long as that company operated the road. About five years ago it sold out to appellant, who changed the road to an electric line and has since operated electric cars over it. Appellant, at the request of R. L. Callahan, the son of James Callahan, moved the station 376 feet westward to Mocking Bird Lane and has since stopped its cars at Mocking Bird Lane and not at the point 376 feet east of it where the steam cars stopped. Appellees, who are the widow and some of the other children of James Callahan, brought this suit to require the appellant to stop its cars at the old stopping place 376 feet east of Mocking Bird Lane. The circuit court adjudged them the relief sought and the railway company appeals.

After appellant had moved the station 376 feet west of its former location, appellees applied to the railroad commission who heard the parties and made an order refusing their consent to the abandonment of the old stop-

ping place. Section 772, Kentucky Statutes, among other things, provides:

"Any company that has established and maintained throughout the year, for five consecutive years, a passenger station at a point on its road, shall not abandon such station without the written consent of the Railroad Commission."

Appellant did not have the written consent of the Railroad Commission to abandon the old station. and if what it did was an abandonment of the station, its conduct was wrongful. If, on the other hand, what it did was not an abandonment of the station, then it was unnecessary for appellant to have the consent of the Railroad Commission, and the fact that the Railroad Commission refused to give its consent is not material; for by the statute they are only given jurisdiction to determine when a station shall be abandoned. The case then comes to this, was there an abandonment of the station when the stopping place was moved westward 376 feet? Mocking Bird Lane is the westward boundary of appellees' land; the road runs through their property about one-half mile. Mocking Bird Lane is a turnpike, and a number of suburban homes have been built upon it. A majority of the traveling public are better served by the station being at Mocking Bird Lane for the reason that persons can then reach the cars at the public highway. The chief objection which appellees have to the change appears to be due to the fact that to reach the new stopping place they have to cross a ditch on their land and the bridge over this sometimes washes away.

The prime consideration in the location of stations is the public service. The corporation is created to serve the public, and how it may best serve the public is the first consideration in matters of this sort. In Texas Pacific R. R. Co. v. Scott, 37 L. R. A., 94, it was held that a contract on the part of a railroad company to establish a station at a particular point is not one to keep it there forever, but is subject to the general contingencies of business and the public interest, and that the company might move the station when this was required by the public service. The same view was taken by this court in the case of Board of Trustees of Elizabethtown v. C. O. & S. W. R. R. Co., 94 Ky., 377. In that case the town of Elizabethtown had subscribed $75,000 to the stock of the Elizabethtown and Paducah Railroad

Company upon the condition that "the company build machine shops in Elizabethtown, and if it failed to do so the subscription to be void." The company built machine shops at Elizabethtown and maintained them until it failed. The property having been purchased at the decretal sale by a new company that took the road with the machine shops at Elizabethtown, this company moved them to Paducah, and the town sued for damages. After holding that the town had no lien on the road, this court denying a recovery, said:

"But it seems to us very clear that no obligation was ever imposed upon appellee, by either the act authorizing it to purchase the property, or by its contract of purchase, to continue indefinitely, or for any length of time, use of machine shops at Elizabethtown. According to the terms prescribed, there was a literal performance of the conditions upon which the subscription of stock was made on behalf of Elizabethtown when the machine shops were built there. And in the absence of language showing, or from which it can be fairly implied. it was intended for the machine shops to permanently remain and be operated there without regard to public convenience and necessity, certainly an action brought more than fifteen years after the transaction should not be maintained against a bona fide purchaser of the property, either for damages or other relief, upon the ground the machine shops have been disused at that place."

In the case before us there was no contract between James Callahan and the railroad company that a station should be put on his land. The station was put there merely because it was the proper place for it under the conditions then existing. Appellees plant their whole claim to relief upon the ground that the station having been maintained there for over thirty years it can not be abandoned; but if a mere removal of the stopping point 376 feet is not an abandonment of the station, their action can not be maintained. In Mississippi where the statute is similar to ours a railroad company moved its station in Vicksburg from one point to another in the city, the new point being more convenient to the public than the old one. The railroad commission made an order requiring the company to maintain the old station. The court, in State v. Ala., &c., R. R. Co., 68 Miss., 653,

held that the mere removal of the station from one point to another was not an abandonment. It said:

"The mere site of the station house for passengers has been changed, or is threatened to be changed, but the change of the site of the station-house for passengers from one spot to another in the same town, for reasons of convenience, or business necessity, or public good, is not the abolishment or disuse of the depot in such town. The legislative purpose was to prevent towns and communities being deprived of the uses and benefits of depots in their midst, after the same had been once established, at the pleasure or caprice of railroad companies. It needs no argument to demonstrate the distinction between abolishing a depot—wiping it out of existence—and merely changing its site in the same town, in order to render its existence more beneficial. We must not suppose the Legislature intended to clothe the Railroad Commission with the power to fix unalterably the sites of station-houses in particular spots, in the abscence of an express declaration to that effect; nor are we warranted, by any known rules of construction, in holding that railroads are forbidden to make convenient changes of sites for station-houses in a particular community, because they are forbidden to abolish—wipe out of existence—or discontinue the use of a depot at all in such community. The proposed change of site only may be made, we think, when the public interest and the interests of the railroad company concur in demanding it—provided, the new site selected be not inconvenient or inaccessible."

The same distinction was pointed out by the Supreme Court of Massachusetts in Attorney General v. Eastern, &c., R. R. Co., 137 Mass., 45, and Cunningham v. R. R. Co., 158 Mass., 104. (See also Chicago, &c., R. R. Co. v. People, 222 Ill., 396.) We think the distinction is a sound one. The purpose of locating a station is to serve the public in the locality. To move the stopping place of the cars three or four hundred feet the better to serve the public is not to abandon the station, but to improve it. To illustrate, if a city should be built about a railway station and streets should be run across the track so that trains standing at the usual stopping place would obstruct travel on the streets, who would say that to move the stopping place three hundred feet to avoid obstructing the street, was an abandonment of the station? Or,

if one railroad should be built across another at one of its stations, and to stop the cars at the established point would require them to be across the track of the other road while standing at the station, could it be maintained that a change of the stopping place three or four hundred feet to avoid this danger to life, would be unwarranted under the statute without the consent of the railroad commission? While railway stations may not be abandoned contrary to the statute, reasonable changes may be made in them for the better service of the public, and the removal of a stopping point 376 feet is not an abandonment of a station within the meaning of the statute.

Judgment reversed, and cause remanded to the circuit court, with directions to dismiss the petition.

JUDGE MILLER not sitting.