CHICAGO, BURLINGTON AND QUINCY RAILWAY COMPANY

*v.*

THE PEOPLE *ex rel.* I. O. Grimwood *et al.*

*Opinion filed October 24, 1904.*

1. DRAINAGE—*provisions of Levee act do not apply to districts under Farm Drainage act.* The provisions of the Levee act do not apply to drainage districts organized under the Farm Drainage act.

2. SAME—*repealing section of Farm Drainage act construed.* Section 78 of the Farm Drainage act, in providing that the "general provisions applicable to all districts shall apply to all districts provided for in this act," has reference merely to the general provisions of the Farm Drainage act, and makes them applicable to the various kinds of districts which may be organized under that act.

3. SAME—*right of drainage through natural water-course is an easement.* The right of drainage through a natural water-course is an easement appurtenant to each tract of land through which the water-course runs, and each owner is bound to take notice of the easement possessed by other owners.

4. SAME—*duty of railroad company in bridging natural water-course.* In bridging a natural water-course a railroad company organized under the general law is bound to provide not only for the present volume of such water-course, but for its volume as increased by artificial means in the exercise of the lawful right of drainage possessed by owners of land through which the water-course runs.

APPEAL from the Circuit Court of Kendall county; the Hon. GEORGE W. BROWN, Judge, presiding.

Appellees, the drainage commissioners of drainage district No. 1 of the town of Bristol, Kendall county, filed their petition for a writ of *mandamus* directed to appellant, requiring appellant to construct, enlarge, deepen and widen the waterway over and across the right of way of appellant, and to construct a railroad bridge across the waterway so widened and deepened along appellant's railroad. Appellant demurred to the petition. The demurrer was overruled and appellant elected to stand by its demurrer, and the writ was ordered as prayed. From this order appellant appealed.

Appellees are organized under the Farm Drainage act, and have adopted the bed of Rob Roy creek as the main drain for the lands of the district. The district includes about two thousand acres of land, the majority of which is swamp and slough land, which lands, owing to overflow and the continuous presence of water, have, up to the time of the organization of the district, been unfitted for cultivation. Rob Roy creek runs in a south-easterly course through the district and across the appellant's railroad, a portion of the district lying upon each side of the railroad. The creek is a natural waterway, and has been, as alleged in the petition, a natural water-course for more than fifty years and is the natural and only outlet for the land included in the drainage district, and the petition alleges that by the proposed system of drainage no water, other than the water that has its natural drainage into Rob Roy creek, will be carried through the same, and that by the deepening and enlarging of the creek all the lands in said district will be greatly improved, and made good, tillable lands subject to cultivation. The petition further avers that appellant is a railway corporation doing business in this State, with corporate power to build, construct, operate and maintain a railroad at and in the township and county aforesaid; that more than forty years ago appellant constructed a bridge or culvert across Rob Roy creek of the length of twelve feet and of the width of thirty feet, and has continuously owned and used the same from thence hitherto, and that in the construction of said bridge appellant sank and placed in the said Rob Roy creek huge wooden timbers and stone, which it has ever since kept and maintained there, thereby preventing the deepening of said creek by petitioners, as aforesaid, except by the removal of said timbers and stone, and which, if removed, would result in the destruction of said bridge; that the channel so left under the said bridge has from the time of its construction to the present time remained at the depth of three feet, and that it is now insufficient to allow the flow of water in the ditch or drain

which is proposed to be dug, built and constructed by the petitioners in their capacity as drainage commissioners; that the said ditch or proposed drain is to be an open ditch as the main waterway for said system of drainage. The petition further shows that on the 24th of June, 1903, appellees gave notice to appellant to construct or enlarge the opening at the intersection of its said railroad with Rob Roy creek, for the uses and purposes of said drain, so as to conform and be equal in size to the same, and of the following dimensions: width, twenty-three feet; depth, nine and one-half feet below the surface of the ground underneath the bridge or culvert at the place of intersection; and by the petition a copy of the notice is made an exhibit thereto and a part thereof. The notice referred to is addressed to the appellant, and is as follows:

"You are hereby notified that a bridge is deemed necessary to be made across the right of way of your company at a place or point in section 17, in the said town of Bristol, where the right of way of your said company is crossed or intersected by what is commonly known as the Rob Roy ditch, said construction or improvement to be for the use or waterway of a combined system of drainage being constructed in the vicinity under the charge and direction of the drainage commissioners of district No. 1 in the town of Bristol, county of Kendall and State of Illinois, the main ditch of said drainage where it intersects the right of way of your said company at said point being of the width of twenty-three feet and the depth of nine and a half feet, the bridge so to be constructed to be of the width of twenty-three feet in the clear at surface or level of land and to permit at least sixteen feet in the clear at the bottom of the ditch; and you are hereby required, in pursuance of the statute in such case made and provided, to build and construct such bridge within thirty days from this date."

The petition avers that the present bridge across the said Rob Roy creek is of the value of $8000, and that a new bridge

of the dimensions required for the accommodation of the ditch as improved will cost not to exceed $13,000, and that thirty days have elapsed since the giving of the notice to appellant, and that appellant has neglected, failed and refused to construct and enlarge, in accordance with said notice, the opening under said bridge or culvert.

The demurrer was general, with certain special grounds assigned, as follows: First, that the proceeding is repugnant to section 2 of article 2 of the constitution of the State of Illinois, in that petitioners seek thereunder to deprive this defendant of property without due process of law; second, the statutes under which petitioners are proceeding are repugnant to section 13 of article 2 of the constitution of the State of Illinois, in that petitioners seek thereunder to take and damage the private property of the defendant for public use without just compensation; third, the statutes under which petitioners are proceeding are repugnant to section 14 of article 11 of the constitution of this State, in that petitioners seek to take property of defendant, a corporation, and subject the same to the uses and conveniences of petitioners without an assessment of the damages that will necessarily be sustained by the defendant and without awarding to the defendant a trial by jury; fourth, the statutes under which the petitioners are proceeding are repugnant to the fourteenth amendment to the constitution of the United States, in that thereunder the petitioners seek to deprive defendant of property without due process of law; and fifth, the statutes under which petitioners are proceeding are repugnant to the fourteenth amendment to the constitution of the United States, in that thereunder the defendant is denied the equal protection of the laws.

Hopkins, Dolph & Scott, (Chester M. Dawes, of counsel,) for appellant.

Raymond & Newhall, for appellees.

Mr. Chief Justice Ricks delivered the opinion of the court:

Of the grounds relied upon by appellees to sustain the writ awarded, are, *inter alia,* sections 40½ of the Farm Drainage act and section 56 of the Levee act.

Section 40½ of the Farm Drainage act is as follows: "The commissioners shall have the power and are required to make all necessary bridges and culverts along or across any public highway or railroad which may be deemed necessary for the use or protection of the work, and the cost of the same shall be paid out of the road and bridge tax, or by the railroad company as the case may be: *Provided, however,* notice shall first be given to the road or railroad authorities to build or construct such bridge or culvert, and they shall have thirty days in which to build or construct the same, such bridges or culverts shall in all cases be constructed so as not to interfere with the free flow of water through the drains of the district. Should any railroad company refuse or neglect to build or construct any bridge or culvert as herein required, the commissioners constructing the same may recover the cost and expenses therefor in a suit against said company before any justice of the peace or any court having jurisdiction, and reasonable attorneys' fees may be recovered as part of the cost. The proper authorities of any public road or railroad shall have the right of appeal the same as provided for individual land owners." (Hurd's Stat. 1901, p. 723.)

Section 56 of the Levee act reads: "When any ditch or drain or other work of enlarging any channel or water-course is located by the commissioners on the line of any natural depression or water-course, crossing the road of any railroad company where no bridge or culvert or opening of sufficient capacity to allow the natural flow of water of such ditch or water-course, is constructed, it shall be the duty of the commissioners to give notice to such railroad company to construct or enlarge such bridge or culvert or opening in the grade of such road, for such ditch or ditches or other

work, of the dimensions named in such notice, within twenty days from the service thereof; and any railroad company neglecting, failing or refusing so to do, shall be liable to any owner of land in such district, for all damages to such land sustained by such neglect or refusal; and shall be liable to such district in the sum of twenty-five dollars ($25) for each day such company shall have neglected or refused to construct such work, after the time fixed in such notice for constructing the same shall have expired, which damages or penalty may be recovered before a justice of the peace, if within his jurisdiction, or before any court of competent jurisdiction." (Hurd's Stat. 1901, p. 707.)

Of these acts appellant says that both are repugnant to the various constitutional provisions set forth in its demurrer, and that if it be conceded that they are valid laws, section 56 of the Levee act could have no application to this proceeding; that the legislature has enacted two entirely separate and independent codes of law applicable to the subject of drainage and the organization and government of drainage districts; that one is known as the Levee act and the other as the Farm Drainage act, and that a district organized under the one is subject only to the provisions of that act and those of the other act have no application to such district. In this latter contention we agree with appellant, and deem the question fully settled by the cases of *Gauen* v. *Drainage District,* 131 Ill. 446, *Drainage Commissioners* v. *Volke,* 163 id. 243, and *McCaleb* v. *Coon Run Drainage District,* 190 id. 549.

Appellees now urge that section 78 of the Farm Drainage act, which is the repealing clause or section of that act, makes the sections of the Levee act of general application and applicable to the Farm Drainage act. The language relied upon is as follows: "This act and this repealing section shall not affect other independent laws for drainage and levees not herein mentioned, but shall be construed as an independent act, not affecting other independent drainage

laws except as it is a codification and amended successor to the first three acts mentioned in the repealing section, and the special provisions of this act for their own class of districts shall apply only to such districts, but the general provisions applicable to all districts shall apply to all districts provided for in this act."

We are unable to see that the section relied upon can be given the effect that appellees urge it shall have. The Farm Drainage act provides for various kinds of districts, namely, districts for combined drainage (sec. 11); sub-districts (sec. 43); union districts (sec. 48); special drainage districts (sec. 49); river districts (sec. 75); districts by user (sec. 76) and districts by mutual agreement; and the effect of the repealing clause relied upon is, that the provisions relating to these various districts shall apply only to them, but that the provisions of a general nature, that are applicable to "all districts, shall apply to all districts provided for in this act." This latter provision can have no reference to the Levee act or any provision in it, but, as we construe it, applies only to the various provisions of the Farm Drainage act. There are many provisions of a general nature in the Farm Drainage act that are not repeated under the various special provisions in that act for the specified districts. Such is the provision that bridges shall be made across the drainage ditches in enclosed fields. This provision, by the last clause of the repealing act, and the one now relied upon by appellees, is by that section read into all of the various kinds of districts that may be organized under the act.

The right of drainage through a natural water-course or a natural waterway is a natural easement appurtenant to the land of every individual through whose land such natural water-course runs, and every owner of land along such water-course is obliged to take notice of the natural easement possessed by other owners along the same water-course. For the drainage of large areas of land, drainage districts were authorized by the constitution to be provided for by

proper legislative action. But the constitutional amendment was not solely to authorize drainage along the lines of natural water-courses. The constitutional provision was an express declaration of the people of the right of one man to drain his land over and across the lands of another. It was the declaration of the people of the policy of the State that in a country such as this the rights of drainage of the lands, where such large proportions were swamp and overflowed lands, were paramount to the right of the individual who sought to deny such drainage.

The amendment of 1878 of the constitution, in relation to drainage, was not for the purpose of declaring the right of drainage, but was for the purpose of authorizing special assessments upon property benefited thereby. Where lands are valuable for cultivation, and the country, as this, depends so much upon agriculture, the public welfare demands that the lands shall be drained, and in the absence of any constitutional provision in relation to such laws they have been sustained, upon high authority, as the exercise of the police power. Upon this subject Mr. Cooley, in his work on Constitutional Limitations, (7th ed. p. 868,) says: "Where, under legislative authority, the construction of levees and embankments is required to protect from overflow and destruction considerable tracts of country, assessments are commonly levied for the purpose on the owners of lands lying on or near the streams or bodies of water from which the danger is anticipated. But if the construction should be imposed as a duty upon residents or property owners in the neighborhood, so that they should be compelled to turn out periodically or in emergencies and give special attention and labor to the construction of the necessary defenses against overflow and inundation, it is not perceived that there could be any difficulty in supporting such a regulation as one of police, or of resting it upon the same foundations which sustain the regulations in cities by which duties are imposed on the occupants of buildings to take certain precautions against

fires, not for their own protection exclusively, but for the protection of the general public. Laws imposing on the owners the duty of draining large tracts of land which in their natural condition are unproductive and are a source of danger to health may be enacted under the same power, though, in general, the taxing power is employed for the purpose; and sometimes land is appropriated under the eminent domain."

A natural water-course being a natural easement, is placed upon the same ground, in many respects, as to the public right, as is a public highway. At the common law, if a railroad or another highway crosses a natural water-course or a public highway, such highway or railroad must be so constructed across the existing highway or waterway, and so maintained, that said highway or waterway, as the case may be, shall not only subserve the demands of the public as they exist at the time of crossing the same, but for all future time. In *Ohio and Mississippi Railway Co.* v. *Thillman,* 143 Ill. 127, in speaking of the duty of railroads crossing streams, it is said (p. 133) : "A railroad company, in constructing its road over water-courses, must make suitable bridges, culverts or other provision for carrying off the water effectually. (Angell on Water-courses,—7th ed.—sec. 465*b*.) The duty imposed by statute upon such company to restore the stream crossed, to its former state, or to so restore it as not to impair its usefulness, exists also in the absence of express statutory requirement. (Pierce on Railroads, p. 203.) The same obligation, in such case, rests upon the corporation as rests upon a private owner who undertakes to interfere with the water-course in the same way."

In *Kankakee and Seneca Railroad Co.* v. *Horan,* 131 Ill. 288, in speaking of the contention of the railroad company that the court erred in refusing to give an instruction requested by it, it is said (p. 308) : "It, in substance, tells the jury that the appellant, when fixing the culvert for the passage of the water of the Parker slough, a natural water-

course, was only bound to so construct it that it was no obstruction to the water then flowing into it, but as to any increase of water caused by the drainage into it by people along the course of the slough the appellant would not be liable, though the culvert was not sufficient to admit of the passage of such water. We do not subscribe to this doctrine. The Parker slough was a water-course, and it was the legal right of anyone along its line, for miles above the railroad, where the water naturally shed toward the slough, to drain into it, and no one below, owning land along the slough, would have any legal remedy against such person so draining water into the slough above him, for any damage done to his inheritance by means of an increased flow of water caused thereby. In other words, the slough was a legal water-course for the drainage of all the land the natural tendency of which was to cast its surplus water, caused by the falling of rain and snow, into it; and this, whether the flow was increased by artificial means or not. It would seem legitimately to follow that the railroad company, in providing a passageway for the slough, was bound to anticipate and provide for any such legal increase of the water flow. If it did not, it was doing a wrong and legal injury to any one situated like the appellee, who received injury in consequence of a failure on its part to do its duty."

In *Cleveland* v. *City Council of Augusta,* 43 L. R. A. 638, (Ga.), this language is used: "At common law the rule is, that where a highway is made across another one already in use, the crossing must not only be made with as little injury as possible to the old way, but whatever structures may be necessary to the convenience and safety of the crossing must be erected and maintained by the person or corporation constructing and using the new way."

In the case of *Lake Erie and Western Railroad Co.* v. *Cluggish,* 143 Ind. 347, (42 N. E. Rep. 743,) it is said: "The duty of a railroad company to restore a stream or highway which is crossed by the line of its road is a continuing

duty; and if, by the increase of population or other causes, the crossing becomes inadequate to meet the new and altered conditions of the country, it is the duty of the railroad to make such alterations as will meet the present needs of the public."

In the case of *Lake Erie and Western Railroad Co.* v. *Smith,* 61 Fed. Rep. 885, this language is used: "The duty of a railroad to restore a stream or highway which is crossed by the line of its road is a continuing duty; and if, by the increase of population or other causes, the crossing becomes inadequate to meet the new and altered conditions of the country, it is the duty of the railroad to make such alterations as will meet the present needs of the public. (*Cook* v. *Railroad Co.* 133 Mass. 185.) Under a fair construction of section 3903, Rev. Stat. Ind. 1881, (sec. 5153 Burns' Rev. Stat. Ind. 1894,) it is the duty of a railroad company to construct its road, when it intersects any highway or stream, in such manner as to afford security for life and property; and this is so whether the way is laid out and opened before or after the construction of the railroad.—*Railway Co.* v. *Smith,* 91 Ind. 119; *National Water-Works Co.* v. *City of Kansas,* 28 Fed. Rep. 921."

In *State of Indiana* v. *Lake Erie and Western Railroad Co.* 83 Fed. Rep. 287, it is said: "If, by the growth of population or otherwise, the crossing has become inadequate to meet the present needs of the public, it is the duty of the railroad company to remedy the defect by restoring the crossing so that it will not unnecessarily impair the usefulness of the highway."

In *State* v. *St. P., M. & N. R. R. Co.* 35 Minn. 131, a railroad company had crossed a public street in the city and had so obstructed the street with tracks that it became necessary to lower the street or elevate the railroad. The city council determined to lower the street, and notified the railroad company to make the street under its roadway and the city would make the depression approaching the underneath

crossing. The court, in that case, discussing the duty of railroads crossing existing streets, says: "The duty prescribed is to keep, at all times and under all circumstances, the street, at points where they are intercepted by the railroad, in a condition and state of repair so as not to impair or interfere with their free and proper use, and if this can not be done with a surface crossing, the company must do it either by carrying their tracks over or under the highway or the highway under or over their tracks; and the duty of thus restoring or preserving the free use of the street includes the doing of whatever is needed to accomplish the required end, and which is rendered necessary to be done by reason of the presence of the railroad in the street." And it was held in that case that it was not only the duty of the railroad company to prepare a crossing for the street under its railroad tracks, but it was proper to require it to prepare the depressions or approaches in the street approaching the crossing under the tracks.

The question whether, where no street exists or a drain ditch crosses territory where there is no natural waterway, a railroad can be required, without compensation, to devote a part of its right of way to the public for either a highway or a ditch, is not before us and we do not decide, but we think that the great weight of authority is, that where there is a natural waterway, or where a highway already exists and is crossed by a railroad company under its general license to build a railroad, and without any specific grant by the legislative authority to obstruct the highway or waterway, the railroad company is bound to make and keep its crossing, at its own expense, in such condition as shall meet all the reasonable requirements of the public as the changed conditions and increased use may demand.

The case of *Chicago and Northwestern Railway Co.* v. *City of Chicago,* 140 Ill. 309, was a condemnation for the extension of a street in the city of Chicago across the right of way of the railroad company. The damages assessed to

the company for land taken was one dollar. The company offered to show the expense of grading and planking the roadway, the making of a gate and a power house from which to operate the same, the salary of a tender and the cost of repairs, and insisted that all of these matters were proper elements of damage for land not taken. The lower court denied the contention and this court sustained its judgment, and said (p. 323) : "These items of expense are set up in the cross-petition as damages to the property not taken, —that is, to the right of way on either side of that portion of the right of way which is to be used as a street. How can grading the approaches, planking the crossing and erecting gates damage the right of way adjoining the street crossing? The expenses which they necessitate may require a deduction from the revenues of the company; but there is no proof to show that there is any such injury or inconvenience as reduces the capacity of the corporation to transact its business. Not the grading or planking or gates, but the use of the crossing by the public may result in the stoppage or slower movement of trains and in the increased danger of accidents, but we have held that no damages can be allowed for these inconveniences. (Citing authorities.) Uncompensated obedience to a regulation enacted for the public safety under the police power of the State is not a taking or damaging, without just compensation, of private property or of private property affected with a public interest." In *Illinois Central Railroad Co.* v. *Willenborg,* 117 Ill. 203, it was held that the statutory requirement for railroads to construct farm crossings for the use of adjoining land owners was the exercise of the police power, and that such statute was applicable alike to railroads built before and after its passage. To the same effect as the foregoing cases are *Chicago and Northwestern Railway Co.* v. *City of Chicago,* 140 Ill. 309; *Ohio and Mississippi Railroad Co.* v. *McClelland,* 25 id. 123; *Chicago, Rock Island and Pacific Railroad Co.* v. *Moffitt,* 75 id. 524; *People* v. *Chicago and Alton Railroad Co.* 67 id. 118.

Most of the foregoing cases are upon the common law duty of railroads to keep highways and waterways over which they cross, in such condition as will meet all public requirements, and the duty in such cases is treated as a continuing duty. Those cases not based upon the common law duty are where statutes have been enacted for their regulation under the police power of the State, or where statutes merely declaratory of the common law duty in such cases have been enacted. If it is the common law duty of appellant to make the necessary changes in its bridge and opening across Rob Roy creek as will accommodate the waters which naturally drain through the same, although the flow be increased by artificial means, if the statute in question is but declaratory of the common law duty or is the exercise of the police power, then it is clear that there is no such taking of appellant's property as invades the various provisions of the constitution relied upon in the demurrer. The power exercised would not be that of eminent domain. "The police power is to be clearly distinguished from the right of eminent domain; and the distinction lies in this: that in the exercise of the latter right private property is taken for public use and the owner is invariably entitled to compensation therefor, while the police power is usually exerted merely to regulate the use and enjoyment of property by the owner, or, if he is deprived of his property outright, it is not taken for public use, but rather destroyed in order to promote the general welfare of the public, and in neither case is the owner entitled to any compensation for any injury which he may sustain in consequence thereof, for the law considers that either the injury is *damnum absque injuria* or the owner is sufficiently compensated by sharing in the general benefits resulting from the exercise of the police power." 22 Am. & Eng. Ency. of Law, (2d ed.) 916; *Frazer* v. *City of Chicago,* 186 Ill. 480.

In the case at bar it is not proposed to take the property of appellant, but the proposition is that appellant shall be

required, in the use of its property, to conform to the public needs. The operation of its railroad or its charter rights are not to be interfered with. While its charter is not set out in the petition and its exact provisions are not before us, the presumption will be that its charter is such as is ordinarily granted to construct and operate a railroad between the points therein mentioned. The allegation of the petition is, that appellant was organized "with corporate power to build, construct, operate and maintain a railroad at and in the township and county aforesaid," and there is no presumption that it had any greater powers than those set forth in the petition. As said in *Ligare* v. *City of Chicago,* 139 Ill. 46: "When a franchise is granted to construct ways or streets across a waterway, there is no implied right to destroy the waterway, but it must be so bridged that its use will not be unnecessarily impaired. (Elliott on Roads and Streets, 32.) If it be conceded that the State may authorize the taking or destruction of a waterway, it devolves on those who claim that the State has done so, to show it, and since that is not done by simply showing power to lay out, open and improve streets across waterways, no such power is here shown." And while to conform to the writ awarded in this case may, as was said in *Chicago and Northwestern Railroad Co.* v. *City of Chicago, supra,* "require a deduction from the revenues of the company," it does not interfere with the exercise of its rights under its charter or any of its charter rights.

Appellant has cited and relies upon *Bailey* v. *Philadelphia, etc. Railroad Co.* 4 Harr. 389, (44 Am. Dec. 593,) and *Washington Bridge Co.* v. *State,* 18 Conn. 53. We have examined those cases and do not think they apply. In the first case mentioned, the charter was to locate and construct a railroad between Philadelphia and Baltimore, and if it should be necessary to pass over any navigable stream, a sufficient draw was required to be made in each bridge for the passage of vessels. The railroad company built a bridge with a draw. Subsequently the legislature amended the char-

ter of the railroad company, authorizing it to build a closed
bridge where it had theretofore had a bridge with a draw.
The closed bridge was accordingly built in compliance with
the terms of the charter. Subsequently an act was passed
giving damages to land owners that might be sustained by
reason of said bridge being constructed without any draw or
passage thereunder. The court held that, inasmuch as the
defendant had complied with the special provisions of its
charter, it had vested rights, and was not liable to the action
authorized by the subsequent statute.

The case of *Washington Bridge Co.* v. *State, supra,* was
where a corporation was created by the legislature for the
purpose of constructing a permanent bridge over the Housa-
tonic river, with authority to collect tolls to reimburse the
expense of building the bridge. It was provided that as soon
as such expense, with interest at twelve percentum, should
be reimbursed from the tolls, the bridge and the right of
tolls should be subject to such order and regulation as the
General Assembly should deem proper. Until that time ar-
rived there was no reservation of power. The charter re-
quired the company to build a bridge with a 32-foot draw.
Before the bridge had been operated a sufficient time for the
company to reimburse itself and to realize the interest pro-
vided for in the act, the General Assembly passed an act re-
quiring the bridge company to make its draw fifty feet, and
it was held that, the bridge company having built its bridge
according to the provisions of its charter, the charter was a
contract between the State and the company, under which
the company had vested rights.

It would seem manifest that these cases cannot be con-
trolling in the case at bar, where, so far as appears from the
pleadings, appellant was given no authority, except the im-
plied authority, to build any bridge whatever. That implied
authority was coupled with the common law duty of appel-
lant to build its bridge over the natural water-course, with
a view of the future as well as the present contingencies and

requirements of such water-course, and with the further implied provision that there remained in the State, whenever the public welfare required it, the right to regulate its use. *Ohio and Mississippi Railroad Co.* v. *McClelland, supra.*

That the State is vitally interested in the reclamation of its swamp and slough lands cannot be gainsaid. We all know that the presence of large bodies of stagnant water, such as are found in swamp lands in this State, produce malaria and breed disease-giving germs of various forms, and that the removal of such bodies of water is conducive to the health and welfare of the public. By the removal of such bodies of water and the subjection of such lands to cultivation they are made to bear their proper proportionate burden to the support of the inhabitants and the commerce of the State. Their value is increased, and thereby their contribution in taxes to the State and local governments is increased. The subject was deemed of such importance that the people, by section 31 of article 4 of the constitution of 1870, conferred upon the General Assembly plenary powers in making provision for drainage for agricultural and sanitary purposes, and pursuant to that power the General Assembly passed the act under which the appellees are proceeding, declaring that the organization should be for agricultural and sanitary purposes. The drainage districts organized as are the appellees, under that law are invested with the right of eminent domain and the power of taxation, upon the theory that they are public utilities and are held to be *quasi* public corporations. In their organic character they do not represent merely the individual property owners or themselves, but they represent the State in carrying out its policy, as found in the common law and declared by its constitution and statutes. It has been so often said that it need only be adverted to here, that corporations such as appellant do not hold their property and exercise their franchises strictly in a private right, but that from the nature of their business and their relation to society they are public corpora-

tions in a sense and are subject to public control and regulation, though with their grant of power to traverse the State with their lines of railroad it cannot be said that their right of private property attaches to every highway and water-course over which their roads may be constructed. To so hold would render such enterprises, which are designed for the benefit of the State, obstacles to its progress and a menace to its general welfare. (*Ohio and Mississippi Railroad Co.* v. *McClelland, supra.*) Of course, in the exercise of the right of the public interest, as against such corporations, the demand must be reasonable and must clearly appear to be for the public welfare. In this case it is not questioned that the improvement of Rob Roy creek, as proposed, is necessary for the proper drainage of the lands comprising the drainage district. The petition alleges that such enlargement is necessary and that the same cannot be carried on with the obstructions placed in the bed of said creek by appellant. This the appellant does not deny.

Appellant contends that there is a variance between the notice served upon it and the prayer of the petition, and argues that it has an exclusive right of way of much greater width than its bridge that is asked to be removed and replaced, and that the notice to construct a new bridge and remove the obstructions in the waterway is not broad enough to cover the prayer and order of the writ. We have examined the petition, and there is no averment as to the width of appellant's right of way, and we are unable to say from the proceedings before us, that when appellant has complied with the notice attached to the petition the waterway will not be improved all that is necessary for the proper passage of the waters of the district.

Entertaining the views above expressed and founding our conclusion upon the rights and duties of the parties as found in the common law, we deem it unnecessary to pass upon the constitutionality of section 40½ of the Farm Drainage act.

We think the order for the writ was warranted under the petition and demurrer thereto, and the judgment awarding the same is affirmed.                    *Judgment affirmed.*