CHICAGO, B. & Q. R. CO. et al. v. BOARD OF SUP'RS OF APPA-
NOOSE COUNTY (three similar cases).

(Circuit Court, S. D. Iowa, E. D.   July 27, 1908.)

No. 263.

1. COURTS (§ 366*) — FEDERAL COURTS — AUTHORITY OF DECISIONS OF STATE COURTS.

A decision by the Supreme Court of a state construing the Constitution or statutes of the state, rendered after a suit in a federal court, involving rights previously accrued or liabilities incurred under such Constitution or statutes, has been tried and submitted for decision, is not binding on such federal court in the case, but it is entitled to exercise its independent judgment.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 950; Dec. Dig. § 366.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

2. EMINENT DOMAIN (§ 2*)—STATUTORY PROVISIONS—CONSTITUTIONALITY.

The Iowa statute of 1904 (Acts 30th Gen. Assem. 1904, p. 61, c. 68), which authorizes county boards of supervisors to create drainage districts and to drain lands and change natural water courses to promote the public health, convenience and general welfare, and which, as amended in 1907

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(Acts 32d Gen. Assem. 1907, p. 100, c. 95), provides that any railroad company whose right of way shall be crossed by any drainage ditch or channel shall not be allowed damages on account of bridging the same, is not unconstitutional as taking the property of the railroad company without compensation, the state having the right in the exercise of its police powers, for the purposes expressed in such act, to impose expense or burdens on property without the allowance of an equivalent by way of damages.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 4–8; Dec. Dig. § 2.*]

3. DRAINS (§ 82*)—ASSESSMENT OF BENEFITS—REVIEW OF.

Under the Iowa drainage law (Acts 30th Gen. Assem. 1904, p. 61, c. 68), which authorizes the supervisors of a county to create drainage districts, to construct ditches or change water courses, and to appoint commissioners to classify lands within such districts and assess the benefits, the findings of fact of such tribunals are conclusive, and their action can be reviewed by the courts only as to questions of law, and upon the question of the amount of benefits assessed, which by the express terms of the statute is reviewable on appeal.

[Ed. Note.—For other cases, see Drains, Cent. Dig. §§ 84–86; Dec. Dig. § 82.*]

4. DRAINS (§ 69*)—ASSESSMENTS OF BENEFITS—REASONABLENESS OF AMOUNT.

An assessment of about $10,000 against the property of a railroad company for benefits accruing to such property from the construction by public authority of a new channel down the valley of a river to prevent overflows, in which valley the railroad company had approximately eight miles of track which had previously been overflowed in times of high water and damaged and traffic delayed, considered, and, on the evidence, *held* not excessive.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 75; Dec. Dig. § 69.*]

H. H. Trimble, for the railroad companies.

Clarence A. Baker, for the Board of Supervisors and Drainage District.

SMITH McPHERSON, District Judge. The Chariton river runs from north to south across Appanoose county, Iowa, its course being tortuous and winding through the valley, which is from two to three miles in width. The stream is subject to overflow, at times covering practically all the bottom lands. The Chicago, Burlington & Quincy Railroad Company owns two lines of railroad, crossing said bottom lands in an easterly and westerly direction, two miles more or less apart, crossing the river on bridges built several years since, and across the bottom land on embankments, and at one or more depressions on trestles. One of these roads is known as the Keokuk & Western Railroad, and the other as the Chicago, Burlington & Kansas City Railroad. In 1904 the Iowa Legislature enacted a statute (chapter 68, p. 61, Acts 30th Gen. Assem.) entitled, "An act to promote the public health, convenience and general welfare by leveeing, ditching the lands of the state * * * for the changing of natural water courses to secure the better drainage * * * and providing for the assessment and costs therefor," etc.

The statute provides that the board of supervisors of the county may create a drainage district. The board of supervisors appoints three commissioners to classify the lands benefited and assess the benefits,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes·

giving the owners notice of a time and place for hearing said report, after which the levies are made to defray the expenses of said ditch or change of the water course. The lands are to be classified by tracts of 40 acres or less, according to the legal or recognized subdivisions. From the action of the commissioners and board of supervisors, an appeal may be taken to the state District Court. The drainage district being designated as No. 1 was created by the board of supervisors in 1905, and soon thereafter commissioners were appointed, resulting in the assessment of the Chicago, Burlington & Kansas City Company in the sum of $3,000, and the Keokuk & Western Company in the sum of $4,000, making the sum of $7,000 against the Chicago, Burlington & Quincy Railroad Company, the owner. The Chicago, Burlington & Quincy Railroad Company was only an operating company, and has no interest in these cases.

In 1907, additional assessments were made against the railroad company, aggregating $2,333.33. The company filed claims for damages on account of bridging the new channel in both places, claiming in excess of $30,000, and was allowed about $200. Appeals to the state district court were taken, and afterwards the cases were removed to this court. So that in this court there are four cases; one as to each road covering both assessments of alleged benefits, and one as to each road covering alleged damages on account of the bridging.

The Legislature in 1907 (chapter 95, p. 100. Acts 32d Gen. Assem.) amended the former statute hereinbefore referred to. One section provides that the company shall make said ditch or channel across its right of way, the expenses therefor being allowed the company as its damages, but it shall be allowed no damages on account of bridging. The statutes in question are consistent with the state Constitution, as held by the state Supreme Court, and at a time before any rights or burdens imposed in the present litigation. Ross v. Board of Supervisors, 128 Iowa, 427, 104 N. W. 506, 1 L. R. A. (N. S.) 137; Sisson v. Board of Supervisors, 128 Iowa, 442, 104 N. W. 454, 70 L. R. A. 440. Therefore this court will not consider that question. And that the statute of the Thirty-Second General Assembly is retroactive is not a valid objection thereto, as recognized by all the profession, and the cases cited in the opinion of the Ross Case above referred to on page 432 of 128 Iowa, page 506 of 104 N. W., and page 137 of 1 L. R. A. (N. S.), clearly demonstrate. The regularity of the proceedings herein so closely follows the statutes that any argument with reference thereto would carry us into many details with but little interest, and serve no purpose.

The substantial questions in the cases are two in number.

1. Is the railroad company entitled to compensation for erecting a bridge where each of its roads cross the new ditch or channel? The company claims that, when it built its roads, it erected bridges for each across the Chariton river, and has maintained them ever since. And now to compel it to erect another bridge for each road at an expense of near $40,000, without reimbursing it, is claimed to be taking it without compensation, and therefore void as being unconstitutional. I have given this question the consideration its great importance demands. As will be noticed, the title of the statute, as to

the purpose thereof, is for the public health, convenience, and general welfare of the public. While it enhances the value of property, the purposes are those for health and convenience. And it is known by all persons that a swampy, marshy, and overflowed country is not healthy, and at times such a country is impassable, and at other times is inconvenient for the people to cross. And such a country drained eliminates those things, and is conducive to the welfare. And, in bringing those desired situations about, the expense is distributed against those who will be benefited as much or more than the burden assessed against them. So that, generally speaking, those who bear the expense suffer no injury, but are largely benefited thereby. But the railway company contends that, after having built its bridges across Chariton river, it should not now be required to build another bridge for each of its roads without being reimbursed. Reliance is made upon the case of Mason City & Ft. Dodge Railroad v. Board of Supervisors (by the Iowa Supreme Court, June 10, 1908), as reported in 116 N. W. 805, in which it was held that the railroad company should be given damages for the cost of the additional bridge occasioned by the ditch. The following observations are pertinent to that case, by reason of which it is not to be followed by this court in this case. It was not only decided after the benefits were created and the burdens imposed in the cases at bar, but was decided after the cases were submitted for decision. Under these circumstances a national court will not follow blindly the decision of the highest court of the state in construing state statutes or a state Constitution. City of Ottumwa v. City Co., 119 Fed. 315, 56 C. C. A. 219, 59 L. R. A. 604.

In the case at bar, the territory now drained and heretofore drained is nearly 500,000 acres. The water from that territory all went down Chariton river, except in high water, when it went out over the bottom, and in time back into and down the river. In the cited case by the Iowa Supreme Court, it inferentially at least, and I think fairly, appears that additional drainage and surface waters were carried down the valley as compared with prior waters. But the substantial reason for not following that case is the failure therein to observe and give weight to the two or .more decisions of the Supreme Court of the United States, contented with mentioning and attempting to distinguish the one case in the lower court (212 Ill. 103, 72 N. E. 219), and failing to observe the decision on appeal as reported in Chicago, B. & Q. R. Co. v. People, 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596.

That regard be had to the public welfare, as the "highest law," is an old-time maxim, sound in principle, and of the greatest importance to all persons including owners of property. And with like thought the Supreme Court of the United States decided the case of Chicago, Burlington & Quincy Railroad Co. v. People of Illinois, 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596. That case is not only a most interesting discussion of these questions, but, being an authority binding on this court, it must be followed if in point, and it is to be seen whether in point or not. Rob Roy creek in Illinois, a natural and living stream, was bridged by the railroad company sufficiently high and wide to then, and for years thereafter, carry the water through. Sub-

sequently the drainage board adopted plans requiring a larger opening. And it was held:

"(1) The rights of a railroad company to bridge over a natural water course crossing its right of way, acquired under its general corporate power, are not superior and paramount to the right of the public to use that water course for draining lands.

"(2) Although the opening may be sufficient at the time the bridge is built to carry the waters, yet there is an implied duty on the part of the company to maintain an opening adequate and effectual for such increase in the volume of the water as may result from reasonable regulations established from time to time by public authority for the drainage of the adjacent territory.

"(3) It is the duty of the railway company at its own expense to erect and maintain a new bridge of such capacity as to carry the water through."

The three propositions just enumerated were decided by that court in that case, and I submit there are no distinctions of a controlling character between that case and those now for decision. If, in the case now in hand, the drainage board had planned the ditch to cross the right of way of the company at the point of the old channel, or side by side thereof, then the strongest glass would not enable any one to see a difference between the cited case and the cases at bar. But it is urged with earnestness that, because the ditch is a mile or more away from the old channel, the case is not in point, and that is a distinction I fail to see. By locating the ditch a mile distant, the company will either have two short bridges for each road to maintain, or, if all the water is turned from the old channel into the new one, the company will still have but the one bridge with an opening to carry the water.

In Chicago, Burlington & Quincy Railroad v. City of Chicago, 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 979, it was held that the company could recover but nominal damages for the opening of a new street across the right of way of the company, notwithstanding the large expense incurred thereby to the company. In the case of R. R. v. Bristol, 151 U. S. 556, 14 Sup. Ct. 437, 38 L. Ed. 269, the Supreme Court held that, although the state consented when the road was constructed that the grade crossings could be put in, later the road should be compelled at its expense to take out the grade crossings and put in viaducts or subways. Other cases are cited in the opinion referred to, but these suffice. Whatever promotes the health, the safety, the convenience, and the welfare, limited to certain lines, is an exercise of the police power, for which property without compensation can be taken, and expense and burdens can be imposed without an allowance of the equivalent by way of damages. Believing that the cases at bar are in all respects in principle like the cases passed on by the Supreme Court, the company is denied all damages, other than removing the embankment for the ditch. And for this, damages were allowed by the board of supervisors.

2. The other and remaining question is, Can the drainage authorities assess the railroad company for real or supposed benefits because of the new channel, and, if so, are the assessments in these cases fair and equitable? And this question is in some respects quite different from the other, as, of course, if there are no benefits, there can be no assessments. When a tribunal is empowered or directed to pass up-

on questions of fact, such findings are final and conclusive as to the facts, but not as to matters of law. Therefore the findings of the engineer and board as to the necessities of a new channel, to the end that the public health, convenience, and welfare would be promoted, and as to the location and benefits, and depth and breadth, of the new channel, are all findings of fact concerning which the courts can make no inquiry, much less review or set aside. Ryan v. Varga, 37 Iowa, 78; Slack v. Blackburn, 64 Iowa, 373, 20 N. W. 478; Martin v. Mott, 12 Wheat. 19, 6 L. Ed. 537; Commissioners v. Aspinwall, 21 How. 539, 16 L. Ed. 208; Enterprise v. Zumstein, 67 Fed. 1000, 15 C. C. A. 153; cases cited in People's Bank v. Gilson (C. C.) 140 Fed. 1.

Of course, if the board exceeds its authority, or errs in matters of law, the courts will review. So that all questions in the case were before the board for decision, and its findings of fact will not be reviewed, save only the question of benefits, and if the railroad company were benefited at all, then the amount of benefits in the first instance would be determined by the board, with the right of appeal to the courts only as to the amount. And that the company would be benefited in some sum, cannot be doubted from the evidence. Counsel for the company at the argument conceded some benefits, but vigorously contended that such benefits would be fairly measured by a few hundred dollars, instead of approximately $10,000 as fixed by the county authorities. Heretofore the railroad tracks have been overflowed, requiring the tracks to be repaired, and traffic delayed and suspended. So that the question is, What shall be the assessment? because it is obvious that the overflow will be less with the channel straightened.

Practical men, as well as men educated as civil engineers, have testified in the case. Farmers residing in the neighborhood testified to what has occurred with reference to overflows, and washing of the company's embankments and tracks. What the benefits to the company will be, necessarily is in a measure the subject of a conjecture in part. Many phases of the work of a civil engineer can be stated with precision, for the reason that mathematics is an exact science. Other phases must be determined by opinion, and the opinion formed from observation and experience. It follows that the benefits to the railroad company from its eight miles approximately of railroad within the drainage district cannot be stated with certainty. The character of soil of the area drained, as to what per cent. of the rainfall will go into the ground, that depending on whether the ground is frozen or not, and depending still further on the time the rain is falling, and what rains have preceded, and to what extent, if any, the ground is already saturated, the season having much to do with the evaporation, and perhaps other things, make it impossible of precise calculation. Then, again, the worth of money as to rates of interest vary, as is known by all. But the assessments against the railroad company are calculated with as much definiteness as those against the farm lands.

But taking all things into account, it can be stated in fairness that the benefits to the company as a minimum will be $25,000. This be-

ing so, it cannot be judicially declared that the assessments should be modified. The result is that in the four cases judgments and decrees will be entered in harmony with the motion of the board of supervisors.