THE PEOPLE *ex rel.* S. D. Peeler *et al.* Appellants, *vs.* THE CHICAGO AND EASTERN ILLINOIS RAILROAD COMPANY, Appellee.

*Opinion filed February 21, 1914—Rehearing denied April 15, 1914.*

1. MANDAMUS—*mandamus will be awarded only where there is a clear right to the writ.* Mandamus is an extraordinary remedy, and will be awarded only where there is a clear legal right to it.

2. DRAINAGE—*a drainage district cannot take property without compensation.* A drainage district is organized for the exclusive benefit of the territory within the district and is not a governmental agency such as authorizes it to take private property without compensation, in the exercise of the police power of the State for the suppression of disease.

3. SAME—*section 56 of the Levee act construed.* Section 56 of the Levee act, requiring railroad companies, upon notice from the drainage commissioners, to enlarge bridges or culverts over natural water-courses to a sufficient capacity to allow the natural flow of the water through such water-courses, does not contemplate any more than such natural flow of the water, accelerated by improved drainage methods in such territory, as in a state of nature drains or flows in such water-courses.

4. SAME—*there is no easement in favor of servient estate changing flow of water upon the dominant estate.* The right of drainage through a natural water-course is an easement appurtenant to the land of every individual from whose lands the surplus waters flow into such natural water-course, whether such flow is increased by artificial means or not, but no such easement exists in the servient estate to change the natural course of drainage and flow the water upon the dominant estate.

5. SAME—*when railroad company cannot be compelled to enlarge opening of bridge.* Levee drainage commissioners cannot, by *mandamus,* compel a railroad company to enlarge the opening in its bridge over a creek where it appears from the petition that the natural flow of the creek is to be reversed, so that it will become the outlet of a river instead of being a tributary of the river, as it was naturally, but it is not alleged in the petition that the proposed change will not increase the burden which the railroad company would be bound, in law, to bear had the flow of the creek not been reversed. (*Chicago, Burlington and Quincy Railway Co.* v. *People,* 212 Ill. 103, and *Cache River Drainage District* v. *Chicago and Eastern Illinois Railroad Co.* 255 id. 398, distinguished.)

APPEAL from the Circuit Court of Massac county; the Hon. WILLIAM N. BUTLER, Judge, presiding.

COURTNEY, HELM & HELM, for appellants.

ROBERT J. FOLONIE, HOMER·T. DECK, and C. L. V. MULKEY, (E. H. SENEFF, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellants, the commissioners of Cache River Drainage District, filed their petition in the circuit court of Massac county praying a writ of *mandamus* to require appellee, the Chicago and Eastern Illinois Railroad Company, to remove certain obstructions placed in the channel of·Post creek, in Pulaski county, in order to permit the use of said creek for drainage purposes. The petition, as amended, recited that Cache River Drainage District was organized in May, 1911, and embraced lands in Massac, Pulaski, Union, Johnson and · Pope counties, in all about 68,000 acres in the Cache river

basin, which extends about thirty miles east and west and is from three-fourths to seven and one-half miles in width; that the land embraced in this district is swampy and over-flowed and largely covered with sloughs, ponds, swamps and stagnant water; that the soil is all black loam and is very productive when drained. The petition recites that Cache river affords the only outlet for the water in said basin; that said river enters this basin in Johnson county and runs in a tortuous, crooked course, with a slow, sluggish current, for more than fifty-five miles through this basin and empties into the Ohio river near Mound City, in Pulaski county. The petition further recites the drainage of this basin is of public importance and benefit both as an agricultural and sanitary measure; that commissioners appointed by the Governor pursuant to an act of the legislature of May 16, 1903, reported the feasibility of draining the said basin by dredging and straightening the channel of Cache river, and that said commissioners reported such plan practicable by diverting the waters of Cache river into Post creek, a tributary of Cache river, in Massac county, and thence, by excavations from the headwaters of Post creek, into the Ohio river. The petition states that because of the report of said commissioners, and soon thereafter, the district was organized; that the main ditch proposed is to be forty feet wide at the bottom and is to deflect the water from Cache river into Post creek at a point in Pulaski county, running said water up said Post creek to its headwaters, where by a deep excavation an outlet of about one-half mile in length is afforded into the Ohio river, and that by this means a new bed for the waters of Cache river is afforded, running nearly on a straight line to the Ohio river; that Post creek is a natural water-course, with a deep, well-defined channel, and is a tributary of Cache river. The petition further states that the appellee has constructed across said Post creek, in Pulaski county, a bridge 280 feet long, supported by piling, thereby obstructing the channel

of said stream and leaving a very small passageway for the
water; that said obstructions prevent the flow of water
intended to be carried by said ditch to its outlet into the
Ohio river, and further prevent the dredge-boat of, or in
the employ of, appellants from passing under said bridge
or trestle. Appellants aver it is the duty of appellee to re-
move the obstructions and restore the channel to its origi-
nal condition. ·To the petition is attached, with proof of
service upon appellee, notice of the commissioners' intent
to use Post creek for drainage purposes, with a request that
appellee remove the obstructions before described and to in-
crease the bridge span at this point to 98 feet, without any
piling, posts, pillars, abutments or other obstructions to the
flow of the water therein. The prayer of the petition is
that a writ of *mandamus* issue directing appellee to remove
the obstructions and increase the span length of the bridge,
and for further relief. Appellee filed a general and special
demurrer, claiming the relief sought by the petition was in
contravention of the fourteenth amendment to the consti-
tution of the United States and of section 2 of article 11
of the constitution of the State of Illinois; that it is not
alleged in the petition the burdens imposed upon appellee
are not increased by the reversal of the flow and diversion
of the water from Cache river through Post creek; that
said petition shows the present bridge opening is in excess
of the requirements of petitioners; that the petition fails to
show the natural channel of Post creek is in anywise ob-
structed so as to prevent the passage of the natural flow of
said stream. The demurrer was sustained in the trial court,
and the record is brought to this court by appeal.

Appellants' principal contentions are, that the Cache
River Drainage District is organized under and derives its
powers from an act entitled "An act to provide for the
construction, reparation and protection of drains, ditches
and levees across the lands of others, for agricultural, sani-
tary and mining purposes, and to provide for the organiza-

tion of drainage districts;" (Hurd's Stat. 1911, p. 872;) that when appellee erected its bridge across Post creek it did so with notice that its right to cross said natural watercourse was burdened with the right of the public to an easement in said water-course for all time to come; that under the statute, as well as the common law, it is made the duty of a railroad crossing a natural water-course, at its own expense to so construct and maintain its crossing or bridge as not only to serve the present but future demands for the flow of water through such water-course; also that appellants are invested with the right to exercise the police power of the State, and that the taking or damaging of private property in the exercise of that power without making just compensation does not violate any constitutional right of the owner, because all private property is held subject to such regulation under the police power of the State, as the public safety or welfare demands.

The Cache River Drainage District was organized under what is known as the Levee act as distinguished from the Farm Drainage act. *Chicago, Burlington and Quincy Railway Co.* v. *People*, 212 Ill. 103, and 200 U. S. 561, much relied upon by appellants, involved the provision of the Farm Drainage act respecting bridges, which is section 40½ of that act. That section is not the same as section 56 of the Levee act upon the same subject. But aside from that fact, the decision does not sustain the appellants' right to the relief sought in this case. That case was a petition filed by the drainage commissioners for a writ of *mandamus* to require the railroad company to construct, enlarge, deepen and widen a natural water-course crossed by the railroad, and also for the construction of a railroad bridge across such widened water-course. The petition was held good on demurrer and the writ was granted by the trial court. Upon appeal the judgment was affirmed by this court, and the judgment of this court was affirmed by the United States Supreme Court. (200 U. S. 561.) In that

case the petition alleged Rob Roy creek "is the natural and
only outlet for the land included in the drainage district,"
whereas Post creek, in the case at bar, is a tributary of
Cache river, which the petition alleges is the only natural
outlet for the district sought to be drained, and the use of
Post creek as an outlet for said district·can only be availed
of by reversing the flow of its waters, deepening its channel
and connecting by deep excavation its headwaters with the
Ohio river. The petition in the case above referred to al-
leged that "by the proposed system of drainage no water
other than the water that has its natural drainage in Rob
Roy creek will be carried through the same." No such al-
legation as to Post creek is contained in the petition in the
case at bar, for here it is not the intent or purpose of ap-
pellants to increase the natural flow of water in Post creek
by enlarging or straightening its channel or by ditching and
draining into it or its tributaries water which in a course
of nature drains through its channel, but it is proposed to
reverse its flow by artificial means, change its grade levels,
divert Cache river into it, so that instead of its being a
tributary of and flowing into Cache river, as it does in a
state of nature, Cache river will become its tributary and
flow its water into Post creek.

Post creek, as shown by the petition, is about five miles
in length. Cache river is about fifty-five miles in length,
draining many thousand acres of land, so that, it can read-
ily be seen, turning into Post creek the waters of Cache
river will greatly increase the burdens of appellee in con-
structing and maintaining a bridge of sufficient capacity to
accommodate the increased flow of water. It is not alleged
that the present bridge of appellee over Post creek is in-
sufficient to accommodate the water now flowing through
said creek or such water as might naturally flow through
said creek channel if accelerated by 'artificial means, which
clearly distinguishes this case from *Chicago, Burlington,
and Quincy Railway Co.* v. *People, supra.* The statement

262    32

of the United States Supreme Court in that case, that how and in what way the channel of Rob Roy creek would be used was a concern of the public, only, and that the duty of the railroad company would end when it removed the bridge obstructions, was made in answer to a contention with reference to the increased volume of water diverted into Rob Roy creek by the system of drainage proposed and in view of the allegation in the petition that said creek was the "natural and only outlet for the land included in the drainage district."

Section 56 of chapter 42, being part of the Levee act, provides: "When any ditch or drain or other work of enlarging any channel or water-course is located by the commissioners on the line of any natural depression or water-course, crossing the road of any railroad company where no bridge or culvert or opening of sufficient capacity to allow the natural flow of water of such ditch or water-course is constructed, it shall be the duty of the commissioners to give notice to such railroad company to construct or enlarge such bridge or culvert or opening in the grade of such road, for such ditch or ditches or other work, of the dimensions named in such notice, within twenty days from the service thereof." We do not understand this section was meant to embrace any more than the natural flow of water, accelerated by improved drainage methods in the territory, which in a state of nature drains or flows in a described water-course. It could not, we think, by the most liberal construction be held to provide for the reversal of the flow in such stream and by artificial means adding the water from a territory comprising more than 60,000 acres and drained by a river fifty-five miles in length. This is not such a contemplated or expected circumstance or state of facts as can be said to have been in the mind of the legislature at the time of the passage of the act. Such section provides for the natural flow of water, increased, from time to time, by changed conditions and better drainage, but not

by a reversal of the flow of a water-course and turning into it water which in a state of nature flowed in a different direction, through a different water-course, to its outlet. There may be language in the opinion in *Chicago, Burlington and Quincy Railway Co.* v. *People, supra,* used *arguendo,* from which the inference might be drawn that the public interest and welfare were so involved that the petitioner had the right to invoke the police power of the State. But that was not the basis of the decision. The basis of the decision, which is clearly and unmistakably shown by the opinion, is the established doctrine of the right of the dominant heritage to drainage over the servient heritage. The right of drainage through a natural water-course is an easement appurtenant to the land of every individual from whose land the surplus waters flow into such natural water-course, whether such flow is increased by artificial means or not. This is too familiar to require the citation of authorities. But no such easement exists in the servient estate to change the natural course of drainage and flow the water upon the dominant estate.

Appellants also rely upon *Cache River Drainage District* v. *Chicago and Eastern Illinois Railroad Co.* 255 Ill. 398, which was an appeal from a judgment of the county court of Massac county confirming an assessment against the railroad company for benefits. The court there said: "The commissioners have the right to keep the water-course open for the free flow of water, and in deepening it to increase its capacity they take nothing from the appellant [the railroad company] but are in the exercise of a lawful right. The further fact that they expect to improve the water-course by changing the direction of the flow from the north to the south does not change the character of their right or affect the appellant, so long as the burden imposed upon it by law is not increased." The right of appellant as there defined was expressly limited to conditions which would not increase the burdens imposed by law to provide for the un-

obstructed natural flow of water. The statement is correct but does not support appellants' present position, for the proposed change in the flow of water in Post creek increases the burdens imposed by law upon appellee. The petition does not allege such changes will not increase the burdens of appellee. This is a necessary averment. (*People* v. *Glann,* 70 Ill. 32.) *Mandamus* is an extraordinary remedy, and the writ will only be awarded where there is a clear right to it. *Chicago and·Eastern Illinois Railroad Co.* v. *People,* 222 Ill. 396; 13 Ency. of Pl. & Pr. 667.

It may be conceded that the removal of stagnant water which produces malaria and breeds disease may be a subject for the exercise of the police power of the State, (*Green* v. *Swift,* 47 Cal. 536,) but appellants' drainage district is not such a governmental agency as is authorized to take private property without compensation in the exercise of the police power of the State for the suppression of disease. It was organized upon petition of the requisite number of land owners in the district to reclaim the land for agricultural purposes within the district at the expense of the land owners in the territory embraced therein. In *Bradbury* v. *Vandalia Drainage District,* 236 Ill. 36, a suit against the district to recover damages to land caused by a levee, and where the district attempted to justify the overflow of lands outside the district, caused by its levee, as a lawful exercise of the police power, the court said: "The act under which the defendant is organized provides for drainage for agricultural or sanitary or mining purposes to be maintained by special assessment upon the property benefited thereby. If the county court finds that the proposed drains, ditch or ditches, levee or other works, is or are necessary or will be useful for the drainage of the lands proposed to be drained thereby, for either agricultural or sanitary or mining purposes, the district is to be organized. It is not contended that any other than sanitary purposes come within the undefined limits of the police power, and

districts formed under the act are not necessarily organized as a police regulation to drain lands which would be a menace to public health or a breeder of malaria and disease. So far as it appears, this district, with its scheme for a levee, was organized for the purpose of improving the lands within the district for agricultural purposes, which is not an exercise of the police power, and it was organized upon the petition of a majority of the owners of lands in the belief that they would be benefited by the organization. To deny to the plaintiffs a recovery of the damages which they have suffered by the effort of the owners of lands within the district to benefit themselves would be against natural right and every sentiment of justice, and we find no sufficient reason for exempting the district from liability, whether the levee is regarded as a wrongful obstruction to the waters of the river or as a lawful one under the decree of the county court." And again, quoting from the same opinion: "Lands taken or damaged by a drainage district for its purposes are taken or damaged for a public use, and compensation must be made therefor." We think the language above quoted applies in the case at bar.

That the public have an easement in the channel of Post creek is uncontradicted, and the right of appellee to maintain its bridge is subject to such easement, but before appellee can be asked to comply with the requirements of the petition and increase, at its own expense, the length of its bridge span, it must appear that petitioners are entitled to such relief as a means of affording the unobstructed flow of such waters as have their natural outlet through Post creek.

The petition did not state a case justifying the relief prayed, and we think the judgment of the circuit court was right in sustaining the demurrer to it. The judgment is affirmed.                *Judgment affirmed.*