### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## WESTERN DIVISION

---

### JACKSON, APRIL TERM, 1923.

NASHVILLE, C. & ST. L. RY. *v.* MIDDLE FORK OBION DRAINAGE DIST. NO. 6, WEAKLEY COUNTY.*

### (*Jackson.* April Term, 1923.)

1. RAILROADS. Bridge over public road may be required.

State may directly, or through municipal agency, compel railroad company to maintain bridge erected over public road, remodel it, or build new one, if public safety requires such exercise of police power. (*Post, pp.* 496-498.)

Acts cited and construed: Acts 1909, ch. 185, secs. 5, 6, 7, 8.

Cases cited and approved: Dyer County v. Railroad, 87 Tenn., 712; Harriman v. Railroad, 111 Tenn., 538; Chattanooga v. Railroad, 128 Tenn., 399; Southern Railway Co. v. State, 130 Tenn., 261; New Orleans Gas Light Co. v. Drainage Comm'rs. of New Orleans, 197 U. S., 453; Lake Shore & M. S. R. Co. v. Clough, 242 U. S., 375; State ex rel. Bigham v. Powers, 124 Tenn., 553.

Cases cited and distinguished: C., B. & Q. R. Co. v. Illinois ex rel. Grimwood, 200 U. S., 561; Northern Pac. R. Co. v. Minnesota ex rel. Duluth, 208 U. S., 583.

---

*On duty of railroad company to construct or alter bridge at its own expense over public drainage ditch, see notes in 31 L. R. A. (N. S.), 1118, L. R. A. 1915B, 486.

On necessity of making compensation, and measure thereof upon laying out street across railroad property, see note in 24 L. R. A. (N. S.), 1226.

N., C. & St. L. Ry. v. Drainage Dist.

2. **DRAINS.** Police power to compel reconstruction of bridge across water course stated.

Police power of state to compel railroad to reconstruct bridge across water course at its own expense, in order to facilitate carrying out of drainage project, may be exercised directly as well as indirectly. (*Post, pp.* 498-500.)

3. **DRAINS.** Railroad must bear burden of reconstruction of bridge across river to permit alteration of channel in interest of public.

Where railroad bridge across water course interferes with alteration of channel of river necessary to a drainage project, authorized in interest of public safety or welfare by Laws 1909, chapter 185, railroad must bear burden of such reasonable and necessary reconstruction of bridge as will permit exercise of superior public right. (*Post, pp.* 500-504.)

Cases cited and distinguished: Chicago, etc., R. Co. v. Appanoose County, 182 Fed., 291; Chicago, etc., R. Co. v. Drainage Dist. No. 5, 142 Iowa, 607; Chicago, etc., R. Co. v. Minneapolis, 115 Minn., 460; Cincinnati, etc., R. Co. v. Connersville, 170 Ind., 316; Cincinnati, etc., R. Co. v. Connersville, 218 U. S., 336.

4. **EMINENT DOMAIN.** Measure of damages for crossing of railroad right of way by drainage canal, stated.

Where drainage canal across railroad right of way did not deprive railroad of beneficial use of its easement or property, railroad's measure of damages was not value of land within overlap but the diminished value for railroad purposes of land taken caused by its use for drainage purposes. (*Post, pp.* 504-505.)

Cases cited and approved: Yates & Donelson v. City of Memphis, 137 Tenn., 642; Railroad v. Michaels, 126 Tenn., 702; Railroad v. Memphis, 126 Tenn., 702, Railroad v. Memphis, 126 Tenn., 267.

### FROM WEAKLEY.

Headnote 1. Railroads, 33 Cyc, p. 275. 2. Trains, 19 C. J., section 188. 3. Trains, 19 C. J., section 188. 4. Eminent Domain, 20 C. J., section 203.

Appeal from the Circuit Court of Weakley County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals, from the Supreme Court.—HON. ROBERT A. ELKINS, Judge.

JONES & JONES and H. H. BARR, for plaintiff.

R. E. MAIDEN, for defendant.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The defendant in error, the drainage district, was organized under chapter 185 of the Acts of 1909 for the reclamation of certain wet and swamp lands in Weakley county. The plaintiff in error is a railroad corporation, organized under the laws of Tennessee, one of whose lines crosses the territory of said drainage district.

The drainage district has been duly projected under the act of 1909, and a right of way for the main canal designated, 200 feet wide, crossing the right of way of the railway company. The canal at the point of intersection with the railway company's right of way follows and includes the channel of the middle fork of Obion river.

At present the railroad crosses the river on a substantial bridge, resting on concrete piers about 15 feet apart; these piers resting in turn on cedar piles. The structure is well built and enduring. The specifications for the canal at this point call for a depth of 10 feet and a width of 20 feet at the base and 30 feet at the surface. This makes a considerable change in the present bed of the stream, and will necessitate a reconstruction of the bridge.

After the drainage district was established, and the

engineer's report showing the route of the canal was filed, the railway company, proceeding under the statute, made some exceptions to the proposed route and procured a change thereof so as to have the canal cross the railroad as above indicated. The railway company then filed its claim for damages. Viewers were appointed by the court and assessed the damages of the railway company at $3,000 which report, over exceptions, was confirmed.

The railway company appealed to the circuit court, and the whole matter was there heard *de novo* before the court and a jury. The jury returned a verdict in favor of the railway company for $20 actual damages and for $2,000 incidental damages. Both sides moved for a new trial. These motions were both overruled. The railway company alone perfected an appeal in error to the court of civil appeals. That court reversed the judgment of the trial court and remanded the case for a new trial. The railway company and the drainage district have both filed petitions for certiorari to review the action of the court of civil appeals, which petitions have been granted, and the case has been argued in this court.

The whole controversy is over the measure of damages to which the railway company is entitled.

The right of way sought by the drainage district is 200 feet wide. The right of way of the railway company is 100 feet wide. The overlap will therefore be 100 feet by 200 feet. The changes to be made in the bed of the river will require the temporary removal of the railway company's bridge and the permanent removal of certain piers supporting it, and the foundation supporting those piers. The new channel is to be 30 feet wide at the surface, and there is evidence tending to show that the soil is sandy

and loamy, and that the current in the new channel will be swift. To guard against erosion, therefore, the new channel will have to be crossed by a bridge with a 50-foot span. A span of that length requires steel construction, and the new bridge will cost upwards of $10,000.

The trial judge instructed the jury that the drainage district did not seek to take the railway company's bridge, and that damages should not be allowed for it; that the drainage district was only seeking to take the railway company's easement, excluding the bridge, in a strip of land 100 feet by 200 feet, and that they should look to the evidence and determine the value of that part of the easement to the extent it was appropriated. He further instructed the jury as to incidental damages, but told them that the cost of building a new bridge was not the measure of incidental damages, but that the incidental damages were the damages resulting to the railway company's right of way and other property from the taking of the right of way and passing its canal boat through the right of way by the drainage district.

The court of civil appeals approved the instruction as to actual damages, but seemed to be of opinion that the cost of the new bridge should be allowed as incidental damages; such damages, however, to be diminished by the enhanced value of the railway company's property at this point consequent upon the construction of the new bridge.

The railway company, by apt practice in the courts below, preserved all its rights in the premises, and assigns several errors in this court. All of them seem to come to this that it is entitled to recover, either as actual or in-

cidental damages, the cost of reconstruction of this bridge without abatement.

Sections 5, 6, 7, and 8 of chapter 185 of the Acts of 1909, contain the provisions of that act with reference to the allowance of damages for property taken in laying out a drainage district. Section 7 contains the following:

"In estimating the damages, the viewers shall give the value of the land proposed to be taken without deduction, but incidental benefits which may result to the owner by reason of the proposed improvement may be taken into consideration in estimating the incidental damages."

It will be observed that this language is the same as that used in our statute providing damages in eminent domain proceedings generally. Section 1857, Thompson's Shannons Code.

The charter of the railway company contains the following:

"The said company shall have the right, when necessary, to construct the road, or any branch thereof, across or along any public road or water course; provided the said public road and the navigation of such water course shall not be thereby obstructed."

The railway company is authorized to purchase and hold any bridge that may be necessary to carry the tracks of the railroad.

The duties of a railroad company with respect to its crossings over a natural stream or water course are regulated by the same general rules that define its obligations with respect to a street or road crossing. This will more fully appear from authorities hereafter cited.

In Tennessee it is rather well settled that the state may directly, or through a municipal agency, compel a railroad company to maintain a bridge already erected over a public road, remodel it, or build a new one, if the public safety, welfare, or necessity requires such an exercise of the police power. *Dyer County* v. *Railroad,* 87 Tenn., 712, 11 S. W., 943; *Harriman* v. *Railroad,* 111 Tenn., 538, 82 S. W., 213; *Chattanooga* v. *Railroad,* 128 Tenn., 399, 161 S. W., 1000; *Southern Railway Co.* v. *State,* 130 Tenn., 261, 169 S. W., 1173, L. R. A., 1915B, 766.

Although the question has not arisen here, it is equally well settled in other jurisdictions that the same obligations rest upon a railroad company with respect to its bridges over water courses.

Acting under authority of a statute of Illinois, the commissioners of a drainage district undertook to compel a railroad company to remove its bridge over the channel of a stream called Rob Roy creek, which it was necessary to alter in carrying out the drainage project. The railroad company resisted this demand, and litigation ensued. The statute under which they acted, and the demand of the drainage commissioners, was sustained by the courts of Illinois (212 Ill., 103, 72 N. E., 219) and finally by the supreme court of the United States. In the course of its opinion the latter court said:

"When the railway company laid the foundations of its bridge in Rob Roy creek, it did so subject to the rights of the public in the use of that water course, and also subject to the possibility that new circumstances and future public necessities might, in the judgment of the state, reasonably require a material change in the methods

used in crossing the creek with cars.  It may be—and we take it to be true—that the opening under the bridge as originally constructed was sufficient to pass all the water then or now flowing through the creek.  But the duty of the company, implied in law, was to maintain an opening under the bridge that would be adequate and effectual for such an increase in the volume of water as might result from lawful, reasonable regulations established by appropriate public authority from time to time for the drainage of lands on either side of the creek.  Angell, Water Courses (6th Ed.), section 465b, p. 640." *Chicago, B. & Q. R. Co.* v. *Illinois ex rel. Grimwood,* 200 U. S., 561, 26 Sup. Ct., 341, 50 L. Ed., 596, 4 Ann. Cas., 1175.

This case followed an earlier decision of the same court. *New Orleans Gas Light Co.* v. *Drainage Commissioners of New Orleans,* 197 U. S., 453, 25 Sup. Ct., 471, 49 L. Ed., 831, where the gas company was required to remove its pipes from one portion to another portion of certain streets in New Orleans, without compensation, to accommodate the plans of a drainage project.

The same doctrine was again announced by the supreme court of the United States in *Lake Shore & M. S. R. Co.* v. *Clough,* 242 U. S., 375, 37 Sup. Ct., 144, 61 L. Ed., 374. The latter case perhaps going a little further than the earlier ones.

These decisions have been rather generally accepted, as will appear from cases collected in note 31 L. R. A. (N. S.), 1118.

While under its charter above quoted the rights of the railway company respecting its bridge here do not seem to be different from the rights of other railroad companies

149 Tenn.—32.

in like property, which they were required to reconstruct in the cases herein mentioned, nevertheless charter or contract provisions are not determinative.

" 'But the exercise of the police power cannot be limited by contract for reasons of public policy, nor can it be destroyed by compromise, and it is immaterial upon what consideration the contract rests, it is beyond the authority of the state or the municipality to abrogate this power so necessary to the public safety.' *Northern Pacific R. Co.* v. *Minnesota ex rel. Duluth,* 208 U. S., 583, 28 Sup. Ct., 341, 52 L. Ed., 630." *Chattanooga* v. *Railroad,* supra.

*A fortiori* the railroad company could not acquire by prescription rights which would defeat the exercise of the police power of the State.

Upon the foregoing authorities, it could scarcely be denied that the State, by a direct exercise of its police power, might have required, or might have authorized the drainage commissioners to require, the reconstruction or at least the removal of this bridge by the railway company without compensation to the latter.

That a drainage statute such as chapter 185 of the Acts of 1909 is a proper exercise of the police power for the health and welfare of the people is everywhere conceded. This was not controverted when the constitutionality of this act was tested and every conceivable point made against it in *State ex rel. Bigham* v. *Powers,* 124 Tenn., 553, 137 S. W., 1110.

The police power of the state may be exercised directly as well as indirectly. Section 3 of chapter 185 of the Acts of 1909 contains this language:

"That the ditches and drains herein provided for shall be surveyed and located along the general course of the

natural streams and water courses, or in the general course of the natural drainage of the lands of said district, unless there should be some special and good reason why the natural course should be departed from to secure a new and better outlet, or for any other good reason, and having due regard to the straightening and shortening of such natural streams, water courses, and course of natural drainage.

"Whenever such ditch or drain crosses any railroad track or right of way, it shall be located at the place of the natural waterway across said right of way, unless said railroad company should have provided another place in the construction of its roadbed for flow of the water, or unless another place for so crossing its right of way shall be agreed upon by said railroad company; and if located at the place provided by or agreed upon by the railroad company, such company shall be estopped from afterwards objecting to such location on the ground that it is not the place of the natural waterway."

In the foregoing there is an implied permission for a railroad company to contest the departure of the drain from the natural waterway across its right of way, unless the railroad company had provided another place for the flow of water or unless another place for crossing its right of way had been agreed upon by the company. The first paragraph clearly invests the drainage authorities with so much discretion about departing from the natural waterway that a landowner who was paid for his damages could have little standing to oppose such departure. The special rights to negotiate and to litigate with respect to the location of the drain given to a railroad company seem

out of place, if it was to be paid in full as an ordinary landowner. Why raise an estoppel against it, if it was to receive full pay? Whatever the statute may mean, however, does not seem important upon a consideration of the nature of the railway company's property in this bridge crossing Obion river, a natural water course.

The bridge is owned by the company, subject to the superior right of the public to widen and deepen the water course. If maintenance of the bridge at a particular level or with a particular form of support interferes with the alteration of the channel of the river necessary to a drainage project authorized in the interest of the public safety or welfare, then the railway company must bear the burden of making such reasonable and necessary reconstruction of its bridge as will permit the exercise of the superior public right. In widening and deepening the river bed the public is exercising its reserved right—taking its own. The right and property of the railway company is subordinate.

The foregoing statement of the law is well established by authority. The cases from which quotations following are made, were condemnation cases, involving the right of railroad companies to recover compensation for the erection of bridges over public waterways constructed across the rights of way. In all these cases it was held that the burden of erecting or enlarging a bridge to meet the changed conditions which followed the completion of lawful drainage projects rested on the railroad companies.

"If the drain here involved had existed when the railroads were constructed, the company would have been compelled to bear the expense of building a proper bridge over

the ditch.   Why should it not do so now?   By simply constructing its line first, did the company forever escape this burden, and acquire a vested right that no future public improvement should come that way except at the charge of rebuilding and maintaining the railroad at the place of intersection?   The construction of the ditch did not and could not 'take' a strip of the railroad.   Notwithstanding the easement of the ditch, the company continued in the right to maintain and operate its road.   All the public required was that the company should carry its road over the ditch at its own expense and not at the expense of the public.   To hold that the public must bear the expense of constructing the bridges in question is not to compel them to pay for something which they have taken in constructing the ditch, but is to impose upon them the burden of constructing and maintaining the plaintiff's roads at the point of intersection.   A more reasonable view is that declared by the courts, whose decisions we have quoted, that a railroad corporation takes its franchise authorizing it to construct and maintain its road, subject to the duty of making such modifications in its roadbed, whether the same consists of trestle or grade, as may be necessary to carry the same across such public improvement as highways and public drains.   To require this does not deprive the company of its property without due process of law, or deny it the equal protection of the law, but simply charges it with the obligation of maintaining its own road." *Chicago, etc., R. Co.* v. *Appanoose County,* 182 Fed., 291, 104 C. C. A., 573, 31 L. R. A. (N. S.), 1117.

"It seems to be well settled by the authorities, and with substantial unanimity, that there is a natural easement,

in every natural water course as such, in favor of all lands naturally draining thereinto at any point in its course; that the rights of water course are forever paramount to the rights of a railway company across the same, and that there is probably no power in the state or its agency to surrender such right; that the right of a railway company to lay its track and its bridges across a watercourse is subject to the public right of drainage, and the railway company is bound to foresee the future needs of drainage along such water course, even though they may be increased by artificial means; and that it undertakes from the beginning the continuing duty to adapt itself to, and provide for, such increasing needs as they shall appear" *Chicago, etc., R. Co.* v. *Drainage District No. 5,* 142 Iowa, 607, 121 N. W., 193.

"Under modern conditions railway companies are pioneers in development. Railroads are constructed usually in advance of the public ways and improvements made necessary by subsequent settlements. The railroad is thus first constructed making provision for existing land and waterways, but without reference to subsequent improvements. By such construction natural conditions are changed. Solid embankments may be erected across low lands, or deep cuts made through higher lands. But it is now clearly established in this state, as in most states, that the company so builds its road subject to the reserved right of the public to lay out highways, locate drains, establish or improve water ways across the company's right of way when the necessity therefor arises. For the property taken in making such improvements compensation must be made, but for the incidental expense in making

reasonable changes in the method of carrying its tracks over such improvements, when public safety, health, con- venience, or welfare require such change, no compensation can be claimed by the railway. Such change is required under the reserved or police power of the state." *Chicago, etc., R. Co.* v. *Minneapolis,* 115 Minn., 460, 133 N. W., 169, 51 L. R. A. (N. S.), 236, Ann. Cas., 1912D, 1029.

In another condemnation case arising in Indiana a street was to cross the tracks of the railway company where they rested on an embankment 15 feet above the natural surface of the ground. The proposed street extended across the right of way below the tracks, and a bridge to carry the tracks over the street was thus made necessary. No com- pensation was allowed to cover the costs of the erection and maintenance of this bridge. *Cincinnati, etc., R. Co.* v. *Connersville,* 170 Ind., 316, 83 N. E., 503. This case went to the Supreme Court of the United States, and that court affirmed the decision of the Indiana court, saying:

"The question as to the right of the railway company to be reimbursed for any moneys necessarily expended in constructing the bridge in question is, we think, concluded by former decisions of this court. . . . . The railway company accepted its franchise from the state, subject nec- essarily to the condition that it would conform at its own expense to any regulations, not arbitrary in their char- acter, as to the opening or use of streets, which had for their object the safety of the public, or the promotion of the public convenience, and which might, from time to time, be established by the municipality, when proceeding under legislative authority, within whose limits the com- pany's business was conducted. This court has said that

'the power, whether called police, governmental, or legislative, exists in each state, by appropriate enactments not forbidden by its own Constitution or by the Constitution of the United States, to regulate the relative rights and duties of all persons and corporations within its jurisdiction, and therefore to provide for the public convenience and the public good.' " *Cincinnati, etc., R. Co.* v. *Connersville,* 218 U. S., 336, 31 Sup. Ct., 93, 20 Ann. Cas., 1206, 54 L. Ed., 1060.

Inasmuch as the taking of the railroad right of way by the drainage district does not deprive the railway company of the beneficial use of its easement or property, as is done where the land of an individual is taken for a similar purpose, we think the measure of actual damages is not the value of the land within the limits of the overlap. The railway company should have been allowed the diminished value for railway purposes for the company's exclusive use of the land taken, caused by its use for drainage purposes.

This is the rule generally applied where a new street is laid out crossing a railroad right of way. See cases collected note 24 L. R. A. (N. S.), 1229. This rule seems appropriate here, and is authorized by the principles announced in *Yates & Donelson* v. *City of Memphis,* 137 Tenn., 642, 194 S. W., 903; *Railroad* v. *Michaels,* 126 Tenn., 702, 151 S. W., 53; *Railroad* v. *Memphis,* 126 Tenn., 267, 148 S. W., 662, 41 L. R. A. (N. S.), 828, Ann. Cas., 1913E, 153.

It is conceded on the brief of the railway company that it will have to remove the bridge and the piers and the foundation of the piers, although compensation is claimed for this. It is conceded by the drainage district that it is

to do the excavation. There is therefore no controversy about the manner in which the work shall be done. This plan would anyhow be required upon the authority of *Chicago, B. & Q. B. R. Co.* v. *Illinois ex rel. Grimwood,* supra.

If there are incidental damages to which the railway company is entitled on this record or incidental benefits, we do not see them, although the case has been very fully developed. Some claims of each are made by the respective parties, but we think they are too remote to be considered.

While, therefore, the trial judge did not announce correct rules for ascertaining damages in his charge to the jury, still this error seems to be altogether in favor of the railway company. We do not think it will suffer any substantial damage beyond the expense incident to the reconstruction of its bridge, and that is *damnum absque injuria.* After the bridge is restored the company's property will be perhaps more valuable than before. It recovered a judgment of $2,080 with some interest in the lower court, and this appears to fully cover its legal damage. As heretofore stated, the drainage district did not perfect its appeal from the judgment of the circuit court.

For the reasons stated, the judgment of the court of civil appeals will be reversed, and the judgment of the circuit court of Weakley county will be affirmed.