## STATE OF GEORGIA v. CITY OF CHATTANOOGA.

Eastern Section.   February 5, 1927.

No petition for Certiorari was filed.

1. **Eminent domain.   Ordinarily a municipal corporation simply holds in trust for the benefit of the public an easement, and not an estate in fee in its streets.**

As a general rule a municipal corporation does not own an estate in fee in its streets but simply holds an easement over the property for street purposes.

2. **Eminent domain.   Decree giving the City of Chattanooga the fee to property condemned for streets held erroneous.**

In an action by the City of Chattanooga to condemn for street purposes certain property belonging to the State and leased to a railroad company, wherein the court entered a decree vesting the fee in the city, held that under the ordinances all that was sought was an easement over the property for street purposes and the decree vesting title in fee in the city was erroneous.

3. **Eminent domain.   A city has the right to select and fix the location of its streets.**

In an action to condemn certain property for street purposes held that the city has the right to select and fix the location of its streets regardless of the desire of the property owner.

4. **Eminent domain.   A city has power to condemn an easement for street purposes across property already devoted to a public use, provided it does not materially impair or interfere with the public use to which the property is already being put.**

In an action to condemn certain property for street purposes belonging to the State of Georgia and leased to a railroad company where the State insisted that the property was not subject to condemnation because it was already devoted to a public use, held that the city had power to condemn the property for street purposes so long as it did not materially impair or interfere with the public use to which the property was already devoted.

5. **Eminent domain.   In determining whether the condemnation will interfere with the public use to which it is already being put the property must be considered as a whole.**

In an action to condemn certain property for street purposes where it was insisted that the street would be a material impairment of the public use to which the property was already devoted, held that the property must be considered as a whole in determining this question and since the railroad equipment on the strip of land being taken could be transferred to the remainder of the property with little cost, held that there was not an impairment of the use of the property.

6. **Eminent domain.   Damages.   Damages for property taken for street purposes will be assessed at the full valuation.**

In an action to condemn certain property for street purposes although only an easement was taken held that the damages should be the full valuation of the property for the probability of the land reverting is small and the land would be useless for other purposes so long as used as a street.

Appeal from Circuit Court of Hamilton County; Hon. Oscar Yarnell, Judge.

Modified and affirmed.

W. L. Frierson of Chattanooga, and General Geo. N. Napier, of Atlanta, Ga., for plaintiff in error.

B. E. Tatum, J. W. Anderson, J. B. Sizer, and W. B. Miller, all of Chattanooga, for defendant in error.

THOMPSON, J. The State of Georgia owns a railroad, known as the Western & Atlantic, extending from Atlanta, Georgia, to Chattanooga, Tennessee. A part of the properties of this railroad is an eleven-acre tract of land lying in and near the center of the business or shopping district of the City of Chattanooga. On this eleven-acre tract are situated buildings, depot facilities, main-line, team and storage tracks, private roadway, etc., used in connection with the operation of said railroad.

Said railroad (including said eleven-acre tract) was leased by the State of Georgia to the Nashville, Chattanooga & St. Louis Railway for a period of fifty years, i. e., from December 27, 1919, to December 27, 1969, and is being used by said Railway as a part of a line from Nashville, Tennessee, to Atlanta, Georgia.

Under its charter powers to open and extend streets, etc., and under Shannon's Code, sections 1981 to 1984, inclusive, as amended by Acts 1925, chapter 31, the City of Chattanooga has instituted and conducted this condemnation proceeding to open and maintain two streets on said eleven-acre tract, i. e., to extend Broad street, which ends at the north boundary of the track, from said north boundary to the south boundary of said tract, and Eleventh street, which ends at the east boundary of said tract, from said east boundary to Broad street as extended.

Pursuant to the procedure outlined in said code sections, as amended by said Act of 1925, condemnation ordinances were passed; commissioners assessed and reported the compensation or damages on account of Broad street at $144,000, and Eleventh street at $41,000; said report was spread upon the minutes; said money (totaling $185,-000) was paid into the office of the city recorder for the benefit, to· the account, and subject to the order of, the State of Georgia and the Nashville, Chattanooga & St. Louis Railway (which had agreed that eighty-five per cent should go to said Railway and fifteen per cent to said State) ; and said Railway drew out of the office of said recorder its part or portion of said money.

The State appealed to the circuit court, and also filed a petition in the circuit court, praying for a certiorari and supersedeas to remove the proceeding to that court and to stay the opening of the streets until the right and power of the city to condemn had been judicially

determined. The writs were granted. Later, the city filed its return and answer to the petition and also a motion to dissolve the writ of supersedeas. On this motion the supersedeas was dissolved. The State then applied to this court (Court of Appeals) for supersedeas to stay the opening of the streets until the cause could be heard and determined on the merits in the circuit court. After a full hearing the supersedeas was granted, and the opening of said streets was stayed until a trial could be had on the merits in the circuit court. The cause was heard on the merits in the circuit court, and on July 21, 1926, a final judgment was rendered in favor of the city; said court also holding that said amounts of $144,000 and $41,000, respectively, were just, adequate and sufficient, etc.

From said judgment the State has appealed to this court and has assigned errors making two questions: First, that under the law and the facts proven the city was without the right or power to condemn; and Second, that the amount allowed on account of Eleventh street ($41,000), was inadequate, and was not supported by any material evidence fixing the compensation or damages that low.

As to the first of these questions, the State's insistence is as follows: That although the record shows that the opening of said streets will not now or in the future, whether the Western & Atlantic continues to be operated by the N. C. & St. L. Railway as a part of its line from Nashville to Atlanta, or whether it should be operated as a separate and independent railroad, materially impair or interfere with the use for railroad purposes to which the eleven acres as a whole may be put, and notwithstanding the fact that the tracks, facilities or appliances situated on the condemned strips can be removed therefrom onto adjacent parts of the tract where they would be just as efficient, etc., at a nominal or slight expense, yet, nevertheless, since these tracks, facilities or appliances situated on the strips constitute a part of the necessary and indispensable railroad operations, the city is without power to condemn because the defendant's use of the strips for railroad purposes would not only be materially impaired or interfered with, but the defendant in fact would be ousted therefrom entirely. In other words, the State admits that property already devoted to one public use may be condemned for another public use, provided the latter use does not destroy or materially impair or interfere with the first use, but it insists that in determining the question as raised in this case the court must not look to the eleven-acre tract as a whole but must simply look to the strips sought to be condemned, and if the proposed use of those strips will destroy or materially impair or interfere with the present use thereof for railroad purposes, then the strips can not be condemned and used by the city for street purposes.

To a proper determination of this question it is necessary to consider the object and purposes which the city was seeking to accomplish. Market street extends in a general northerly and southerly direction, and is intersected at right angles by Ninth street, which extends east and west. From Market street west, Ninth street is called West Ninth street. For a distance of about 950 feet south of Ninth street, Market street extends almost due south, then it angles away somewhat to the southeast, and intersects with Main street, which extends east and west, at a point probably a mile south of Ninth street. At a point about 2000 feet south of Ninth street, a street known as Cowart street extends from Market to Main street, and intersects with Main at a point about 1200 feet west of where Market intersects with Main.

Chestnut street extends in a general northerly and southerly direction and intersects at right angles with West Ninth street at a point about the distance of two ordinary city blocks west of the intersection of Market and West Ninth streets. For a distance of about 1200 feet south of West Ninth street, Chestnut street extends almost due south, the first 950 feet being parallel with Market street. It then angles away to the southwest and intersects with Main street at a point about the distance of three or four ordinary city blocks west of the intersection of Cowart and Main streets.

Main street is more than a half mile south of West Ninth street, and there is an area of land bounded on the north by West Ninth street, on the east by Market and Cowart streets, on the south by Main street, and on the west by Chestnut street, which is traversed by only one street, i. e., West Thirteenth street, which extends east and west across the south end of said area from Cowart to Chestnut. This area is more than a half mile long, is the distance of two ordinary city blocks wide at the north end, is the distance of three or four ordinary city blocks wide at the south end, and is even wider in the middle than at the south end, and since there is no street whatever extending north and south through this area, the traffic on Chestnut, West Ninth and Market streets is badly congested, and the business or shopping district of the city is injured and held back.

The eleven-acre tract owned by the State and leased to the N. C. & St. L. Railway lies in the northeast corner of this area. It fronts on West Ninth street from Market to a point a short distance west of the intersection of Broad and West Ninth streets, and extends southwardly from West Ninth street a distance of 1059 feet. The land in the northwest corner of the area (west of the eleven-acre tract) belongs to and is used by the N. C. & St. Louis Railway. The land (in the area) immediately south of the eleven-acre tract belongs to and is used by the N. C. & St. L. Railway. Immediately south of this land is land of private citizens and corporations such as the Shelton Mills,

etc., and still south of this is land owned by the A. G. S. Railroad Company, and others.

From this statement of facts, and from the record as a whole, it is apparent that the city officials were trying to traverse this area from the north to the south by extending Broad street from its ending at West Ninth street to Main street. It is also apparent from the record that they desired to have Broad street, as thus extended, run as nearly as possible parallel with Market and Cowart streets, and to intersect with Main street at the point where Whiteside street intersects with it from the south. To accomplish this purpose it was, of course, necessary for Broad street, as extended, to traverse the eleven-acre tract as well as the lands south thereof and owned by the N. C. & St. L. Railway, the Shelton Mills, the A. G. S. Railroad Company, and others. And to accomplish this purpose it was only necessary for the city to acquire by condemnation proceedings or otherwise an easement for street purposes across the area (including the eleven-acre tract) above described and bounded. It was not necessary for it to acquire an estate in fee in the lands composing said area. It may be that its Charter and Code, sections 1981 and 1984, as amended by Acts 1925, chapter 31, gave it the power to condemn or acquire by condemnation proceedings an estate in fee in said lands, but certainly it was not necessary for it to do more than condemn or otherwise acquire an easement for street purposes along and across the same.

Ordinarily, a municipal corporation simply holds in trust for the benefit of the public an easement (not an estate in fee) in its streets. State v. Taylor, 107 Tenn., 445, 64 S. W., 766. And it might be said that on account of this fact, an abutting owner is entitled to compensation if the municipal corporation closes a street or changes its grade and destroys his ingress and egress to and from the street. Hamilton County v. Rape, 101 Tenn., 222, 47 S. W., 416. Other cases recognizing that ordinarily a municipal corporation holds merely an easement and not an estate in fee are McHarge v. Newcomer & Co., 117 Tenn., 595, 100 S. W., 700, and Wilkins v. Chicago, etc., Co., 110 Tenn., 442, 75 S. W., 1026. Moreover, it was said by the Supreme Court in a condemnation proceeding to open and establish a public road:

"When the present case was tried before the chairman of the county court, after establishing the road, he divested title out of the plaintiff in error and vested it in the public, and this was affirmed by the circuit judge. This matter is complained of here. We are of opinion that the order of the county court, and also the judgment of the circuit court, was in that respect erroneous. The public obtains no title to the road, but only an easement or right of way so far as the same may be necessary to render effective and operative in the

public the right to occupy and use as a public road the land laid off as such." Carroll v. Griffith, 117 Tenn., 500, 97 S. W. 66.

It thus not being necessary for the city to acquire or condemn anything more than an easement for street purposes across said tract (although it was necessary that this easement be impressed upon the ultimate fee owned by the State of Georgia) we will examine the ordinances passed by the city and involved in this cause, and determine whether they purport to condemn an estate in fee in the strips involved, or merely an easement for street purposes across the eleven-acre tract.

Separate ordinances were passed as to the two streets, Ordinance No. 1789 dealing with Broad street, and Ordinance No. 1790 dealing with Eleventh street. It might be stated here that some of the owners of other lands situated in the area and traversed by the proposed street (Broad street) contracted with the city without the necessity of condemnation proceedings, and the city instituted separate condemnation proceedings against others who did not.

The ordinances are too lengthy to be quoted in this opinion, but an examination of No. 1789 (which in all material respects is similar to No. 1790) shows the following: The caption recites, among other things, that it is "an ordinance showing the necessity for the opening and extending of Broad street eighty feet wide from West Ninth street to Whiteside street and establishing said street," etc. Certainly there is nothing in the caption evidencing an intention to condemn anything more than the easement for street purposes which municipal corporations ordinarily have.

The first three paragraphs recite that whereas on account of traffic congestion (describing it) the Board of Commissioners "deem it necessary to extend Broad street from its present south terminus on Ninth street to Whiteside street;" and whereas, under its charter, the code sections and the Act of 1925, the city has power and authority to "take and condemn land necessary for the purpose of building, extending and widening streets;" and whereas it is necessary for the city "to acquire and appropriate and have the right to use a strip of land eighty (80) feet wide belonging to the State of Georgia and leased to the Nashville, Chattanooga & St. Louis Railway and the Western & Atlantic Railway, on a part of which there are now located railroad tracks and switch tracks. Said strip of land is described as follows:" Then followed a description of the strip across the eleven-acre tract. The ordinance then continued:

"Whereas, the State of Georgia, and the Nashville, Chattanooga & St. Louis Railway and the Western & Atlantic Railway, the owners of the fee and the leasehold interest in said land, require compensation and damages for the taking of their separate interests therein.

"Now, therefore, section 1: Be it ordained by the board of commissioners of the City of Chattanooga, Tennessee, that a street is hereby established opening and extending Broad street from the south line of west Ninth street, where it intersects with Broad street, to Whiteside street, at a width of eighty (80) feet."

Then followed provisions appointing freeholders to ascertain the damages to which the State and N. C. & St. L. Railway "are entitled by reason of the acquiring, appropriating and taking of the said property and property rights for the uses and purposes, as above set forth, for the opening and extending of said street," and to hear evidence "as to the value of the said property and the damages caused by the taking and appropriating said property for said street purposes," etc. Then followed provisions for notice to be given the State and N. C. & St. L. Railway, etc., and requiring said freeholders to make report in writing to the board of commissioners, etc.

The next and concluding material section of the ordinance was as follows:

"Section 6. Be it further ordained, That upon the spreading of the said report, findings, and decisions of the said freeholders upon the minutes of the board of commissioners, and the payment of such damages as may be assessed by said freeholders into the hands of the auditor of said city for the use and benefit and to the order of the owner and lessees of said property, the commissioner of streets and sewers is hereby authorized, after giving not less than fifteen (15) days' notice to the owner and lessee, to take possession of the premises described so far as is necessary for the uses herein named."

It seems to us that the proper construction of the foregoing ordinance, in the light of the facts and considerations hereinbefore stated, is not that it condemns an estate in fee in the strip described, but that it condemns an easement for street purposes across said eleven-acre tract and fixes the location thereof.

That the city had the right to select and fix said location is the only logical conclusion to be drawn from the reasoning in Telegraph Co. v. Railroad Co., 133 Tenn., 691, 182 S. W., 254. It is true that in that case the court was dealing with the question of the right of the Telegraph Company to select the location of a telegraph line, the easement for which it was condemning along the right-of-way of the Railroad Company under a statute which empowered the Telegraph Company to condemn said easement provided the ordinary use of such railroad be not thereby obstructed. But the same result is reached in the case at bar, because, under the well-settled law of this State, the city has the power to condemn an easement for street purposes across property already devoted to a public use, provided said use for street purposes will not materially impair or interfere with the public use to which the property is already being put, and as rea-

soned by the Supreme Court in Railroad v. Memphis, 126 Tenn., 283, 148 S. W., 662, this right or power of the city to condemn would be a vain and empty thing if the city did not have the right to select the location and was compelled to permit that matter or question to be determined by another and adverse interest.

If our construction of the ordinance is correct, then it necessarily follows that the right of the city to condemn and select the location of the easement for street purposes across said eleven-acre tract depends upon whether the use of said eleven-acre tract as a whole will be materially impaired or interfered with. It seems to us that this is clearly recognized in Railroad v. Cemetery Co., 116 Tenn., 400, 94 S. W., 69, where a railroad company was trying to condemn a right-of-way across a corner of a tract of land of the defendant cemetery company. In holding that it could not, the Supreme Court said:

"In the present case, it appears that the whole tract was devoted to the public use when the defendant corporation organized and purchased the land under its charter. The plan is an entirety. The destruction of any part would mar the whole. It is true that the whole area has not yet been beautified, but plans have been devised for this purpose."

It also seems to us that our holding that the eleven-acre tract should be looked to as a whole in determining whether the opening of the street will constitute a material impairment, etc., is in harmony with other decisions of the Supreme Court, such as M. & O. R. R. Co. v. Mayor and Aldermen, 137 Tenn., 491, 194 S. W., 572; N. C. & St. L. Ry v. Drainage Dist., 149 Tenn., 490, 261 S. W., 975; Railroad v. Memphis, 126 Tenn., 267, 148 S. W., 662; Railroad v. Railway, 116 Tenn., 533, 94 S. W., 69.

As has been hereinbefore stated, the use of the eleven-acre tract considered as a whole will not only not be materially impaired or interfered with, but will, in fact, be benefited by the opening of said streets, and the cost of removing onto adjacent parts of its tract the few storage and team tracks, the loading crane, and other railroad appliances situated on the strips over which the streets will pass, will be nominal or slight, and we therefore are of the opinion that the city had the right and power to condemn. The first assignment of error will accordingly be overruled, except that a judgment may be drawn modifying the judgment of the lower court to the extent of making it clear and plain that the city has acquired in and by the proceedings only an easement for street purposes as hereinbefore outlined.

As has been stated, the second assignment of error makes the question that the amount allowed on account of Eleventh street ($41,000) is inadequate and is unsupported by any material evidence fixing it that low.

The record shows that the freeholders appointed by the ordinance filed a report in writing which was spread upon the minutes, etc., fixing the amount at $41,000. This report was a part of the record upon which the cause was tried in the circuit court, but the evidence taken by said commissioners was not made a part of the record, and was not before the Circuit Judge when he tried the cause. The evidence introduced by the city before the Circuit Judge was that of three witnesses (all real estate men) who had examined the property, and had carefully considered the matter in collaboration with each other. These three witnesses all fixed the value of the strip of land to be occupied by Eleventh street as extended at $53,700. The defendant's witnesses, of course, put a higher valuation on it.

So it appears that the Circuit Judge ignored the testimony of the three witnesses introduced by the city and adopted the valuation reported by the freeholders, although the evidence upon which said freeholders made their report was not before him.

We think this was error, provided the full value of the land should have been allowed.

The code sections, as amended by the Act of 1925, simply use the words "damages or compensation," without laying down any rules or principles governing the assessment thereof.

As has been shown, the city has condemned only an easement for street purposes, and if the State had only owned an easement for railroad purposes (as is the usual case) the full value of the land could not have been allowed. N. C. & St. L. Ry. v. Drainage Dist., 149 Tenn., 490, 261 S. W., 975. But although the State did not file its title papers, the city has proceeded on the theory that the State owned the land in fee-simple, and the facts proven in the cause indicate that it did. We therefore regard it as an established fact that the State had a fee-simple title to the land, and that now since the execution of the lease to the N. C. & St. L. Railway, it owns the ultimate fee-simple title subject to said lease.

It is our opinion that although the city has acquired only an easement for street purposes, the State and its lessee were entitled to be allowed the full value of the land to be occupied by the street as "damages or compensation" under the Act of 1925. There is only the remotest possibility that the land will ever revert, and the use of the land as a street will practically destroy its value for use as railroad property. It seems to us that the reasoning of the Supreme Court in Light & Power Co. v. Board, 152 Tenn., 348, 277 S. W., 889, is almost as applicable to the situation shown in the case at bar as it was to the situation there involved, and in that case the full value of the land was held to be recoverable.

We think the trial court should have adopted the sum of $53,700 as the basis of recovery. But since the State (under the agreement)

is entitled to only fifteen per cent, and the N. C. & St. L. Railway has not only not contested the matter but has accepted and withdrawn its part of the damages or compensation, the recovery in favor of the State will only be increased by the sum of $1,905, thus making a total recovery in its favor of $29,655.

In all other respects than the two modifications hereinbefore made, the judgment of the circuit court will be affirmed. The costs of the circuit court will remain as there adjudged. The costs of the appeal will be taxed three-fourths against the State and one-fourth against the city.

Judge Portrum concurs in all respects.

Judge Snodgrass concurs in the results reached but puts his concurrence as to the first assignment of error upon other grounds.